Thomas NILAN

v.

The Honorable Salvatore De MEO, et al.

Albert FISHMAN

v.

The Honorable Salvatore De MEO, et al.

Ralph CALVANESE and Jack Brody

v.

The Honorable Salvatore De MEO, et al.

John J. McCREADY, et al.

v.

The Honorable Salvatore De MEO, et al.

Civ. A. Nos. 81–2660, 81–2889, 81–3769 and 83–2165.

United States District Court, E.D. Pennsylvania.

Dec. 27, 1983.

Donald S. Leibowitz, Philadelphia, Pa., for plaintiffs in Nos. 81–2660 and 81–2889.

R. David Bradley, Philadelphia, Pa., for plaintiffs in No. 81–3769.

Howard Lazaroff, Philadelphia, Pa., for plaintiff in No. 83–2165.

Richard J. Gold, John M. Myers and Gerald T. Clark, Philadelphia, Pa., for defendants DeMeo, Logan, Walsh, and City of Philadelphia.

Louis W. Fryman, Philadelphia, Pa., for defendants Republican City Committee and Meehan.

## MEMORANDUM/ORDER

LOUIS H. POLLAK, District Judge.

This matter involves a suit by terminated employees of the Philadelphia Traffic Court against the President Judge of that court, the Chief Clerk, the Director of Administration, the City of Philadelphia, the Republican City Committee, and William Meehan, a member of the Republican City Committee. Plaintiffs contend that defendants fired plaintiffs or forced them to resign primarily due to plaintiffs' refusal to support actively the Republican Party, or plaintiffs' membership in the Democratic Party. Plaintiffs framed their action as falling within 42 U.S.C. §§ 1983, 1985(3), and 1986. Plaintiffs also brought several pendent state law claims.

Defendants have moved to dismiss Count II of the complaint.[1] Count II alleges violation of the Ku Klux Klan Act, 42 U.S.C. § 1985. I heard argument on this motion on July 28, 1983. However, because neither the parties nor the court had had time to assimilate the Supreme Court's July 5 decision in *United Brotherhood of Carpenters and Joiners v. Scott*, —— U.S. ——, 103 S.Ct. 3352, 77 L.Ed. 1049 (1983), I asked for post-argument submissions on the question of section 1985(3)'s application to conspiracies such as that alleged here. All parties submitted such memoranda, and I have considered them.

 In Count II, plaintiffs allege a conspiracy by the City, certain officials of the Traffic Court, and the Republican City Committee to deprive plaintiffs of their jobs because of their political affiliation and activity. In order to make out a section 1985(3) claim, a claimant must show that defendants engaged in a conspiracy which had a purpose to deprive the claimant of "equal protection of the laws, or of equal privileges and immunities under the laws," 42 U.S.C. § 1985(3), and which was motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). This motion to dismiss turns on whether an animus against a political group satisfies this criterion. The question whether a political animus satisfies *Griffin* remains open. However, developments in the past year cast considerable doubt on the viability of such a claim.

In April, 1983, the Court of Appeals for the Third Circuit stated that section 1985(3) might apply to conspiracies with a political animus. *C & K Coal Co. v. United Mine Workers of America*, 704 F.2d 690, 700 (3d Cir.1983). Two weeks later, the Court of Appeals for the Second Circuit held that section 1985(3) was a proper basis for a cause of action against state officials who fired a civil servant because of his party affiliation. *Keating v. Carey*, 706 F.2d 377, 386–388 (2d Cir.1983).

In July, however, the Supreme Court raised a serious question about the correctness of the Second Circuit's holding. In *United Brotherhood*, the Court found it unnecessary to determine whether section 1985(3) covered conspiracies motivated by an animus against a political group. Yet, the Court did state that:

> It is a close question whether § 1985(3) was intended to reach any class-based animus other than animus against Negroes and those who championed their cause, most notably Republicans. The central theme of the bill's proponents was that the Klan and others were forcibly resisting efforts to emancipate Negroes and give them equal access to political power. The predominate purpose of § 1985(3) was to combat the prevalent animus against Negroes and their supporters. The latter included Republicans generally, as well as others, such as Northerners who came South with sym-

---

1. Only William Meehan and the Republican City Committee formally moved to dismiss Count II. However, at argument and in post-argument submissions, all other defendants have taken a position identical to that of the private defendants, Meehan and Republican City Committee. The view of section 1985(3) taken here precludes a 1985(3) claim against any of the defendants. I therefore have viewed this motion as if made by all defendants.

pathetic views towards the Negro. Although we have examined with some care the legislative history that has been marshalled in support of the position that Congress meant to forbid wholly non-racial, but politically motivated conspiracies, we find difficult the question whether § 1985(3) provided a remedy for every concerted effort by one political group to nullify the influence of or do other injury to a competing group by use of otherwise unlawful means. To accede to that view would go far toward making the federal courts, by virtue of § 1985(3), the monitors of campaign tactics in both state and federal elections, a role that the courts should not be quick to assume. If respondents' submission were accepted, the proscription of § 1985(3) would arguably reach the claim that a political party has interfered with the freedom of speech of another political party by encouraging the heckling of its rival's speakers and the disruption of the rival's meetings.

103 S.Ct. at 3359–3360.

One district court in this circuit has recognized the doubt cast by *United Brotherhood* on section 1985(3)'s applicability to conspiracies such as that alleged here. *Hauptmann v. Wilentz*, 570 F.Supp. 351, 386 n. 37 (D.N.J.1983). And a district court in Georgia has concluded that "[i]n view of this language [in *United Brotherhood*], this court cannot hold that § 1985(3) reaches politically motivated conspiracies." *Fiske v. Lockheed-Georgia Co.*, 568 F.Supp. 590, 595 (N.D.Ga.1983).

■ *United Brotherhood* expressed the Supreme Court's considerable reluctance to involve the federal courts in policing politics through section 1985(3)'s tort remedy. Precisely that sort of policing would be required if I permitted plaintiffs' Count II to stand. Patronage plays a major role in all politics, and especially local politics. *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673,

49 L.Ed.2d 547 (1976), and *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), set certain limits on the uses of patronage. But it can be reasonably assumed that private political actors will continue to press government officials to exercise such partisan leeway as the hiring and firing processes still permit, conformably with the Court's decisions. To allow section 1985(3) claims in that sort of instance would be to use the statute not only to monitor interactions between public officials and party leaders but also to regulate combat between political parties and among the factions of which parties are composed. I think it is the implicit teaching of *United Brotherhood* that the First Amendment rights identified in *Elrod* and *Branti* should be enforced against public officials and not against actors in the private sector of politics. Section 1983 subsumes such actions; section 1985(3) does not.[2]

For the foregoing reasons, defendants' motion to dismiss Count II is GRANTED.

---

**2.** *Elrod* involved claims against public defendants under 42 U.S.C. §§ 1983, 1985, 1986. The Court identified a constitutional right of association and ordered relief. The Court did not deal with the issue of which statutory sections permitted the claims. *Branti* involved only a claim under section 1983.