Linda J. SELLERS

v.

LOCAL 1598, DISTRICT COUNCIL 88, AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL–CIO, et al.

Civ. A. No. 84–2373.

United States District Court, E.D. Pennsylvania.

Dec. 14, 1984.

fore, is now barred from bringing these claims

before this Court.

Doris Applebaum, Bensalem, Pa., for plaintiff.

Alaine S. Williams, Philadelphia, Pa., for defendants, Local 1598, District Council 88, AFSCME and Frank Flatch, President.

Clayton H. Thomas, Philadelphia, Pa., for defendant, Bensalem Township.

## MEMORANDUM AND ORDER

JAMES McGIRR KELLY, District Judge.

Presently before this court is plaintiff's motion for summary judgment along with her motion for leave to amend her amended complaint. Defendants have filed motions to dismiss Ms. Sellers' complaints under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### A. FACTS

Linda Sellers is employed as a radio dispatcher with the Bensalem township police force. She is a member of the American Federation of State and County Municipal Employees (AFSCME) which has an operating agreement with the township. The seeds of this dispute were sown when Ms. Sellers was suspended without pay for chronic lateness. The terms and conditions of Ms. Sellers' employment are contained within the collective bargaining agreement (CBA) entered into by her local and the township. Article VIII of the CBA provides that the township may not suspend or discipline an employee without just cause. Ms. Sellers was disciplined pursuant to an established township policy that considers an employee who is late for work five or more times in any one month subject to disciplinary measures.[1] A first offense brings about nothing more than a written reprimand. The offender is put on notice of her action and advised that further violation may necessitate stronger measures. Ms. Sellers was admonished in such a fashion in January 1984 for excessive lateness in December 1983. The second offense carries with it a punishment ranging from a written reprimand to a maximum three

---

1. This policy was published in a township memorandum sent to all employees in February 1976.

days suspension. The plaintiff was suspended for three days in the beginning of April 1984 for the second violation. A third violation of the rule increases the punishment to include a suspension from between five to ten days. Approximately three weeks after her second suspension, Ms. Sellers was again cited for excessive lateness and suspended for ten days.

Ms. Sellers does not dispute that the time cards, which record her attendance, reveal that she was "excessively late" according to township rules. The essence of her complaint is that she is being purposely singled out for disparate treatment for her vocal and active opposition to the Republican township supervisors and their supporters within the police ranks.

Bensalem township has found itself in the midst of a political upheaval within the past year. In hotly contested primary and general elections, that produced bitter infighting within the dominant political party, there emerged a new board of supervisors to represent the township. The plaintiff, an ardent supporter of the losing faction, believes that her opposition to the new board members is the main reason for her ten day suspension.

The CBA provides employees with a procedure to appeal the disciplinary action. This procedure, known in the vernacular as "grieving a dispute," was used by the plaintiff and her union in an attempt to settle the problem.

The CBA's grievance procedure outlines the four stages an appeal of a dispute may take. The first step provides that the employee and the supervisor should discuss the problem between themselves in effort to resolve it. If that meeting proves unsuccessful, the employee may appeal to the township manager who will mediate the dispute and either affirm or deny the grievance. If the employee still believes that the grievance has not been resolved to her satisfaction, an appeal from the step two

hearing may be made to the Board of Supervisors of the township.[2] The final appeal involves submitting the dispute to binding arbitration. Unlike appeals from the first three stages, the union and not the employee, decides whether the grievance warrants binding arbitration. The procedural history of Ms. Sellers' grievances begins with the first suspension in early April. A meeting between her supervisor and herself produced no resolution of the issues. The union notified the township manager that a step two hearing was needed. Prior to this hearing, Ms. Sellers received her second suspension. A grievance was filed on this action and the step one hearing was waived in order to consolidate both grievances before the township manager.

The step two hearing was attended by the plaintiff, her shop steward, Frank Flatch (the president of her local), the captain of Bensalem's police force and the police lieutenant who issued the suspensions. Rigorous cross-examination by each side took place and charges of political motivation were leveled at the police department. The union was supportive of Ms. Sellers' complaint and believed that the township record indicated unequal treatment among employees for the same violation. The township manager, nevertheless, upheld the suspension on the basis of plaintiff's attendance record. Ms. Sellers and the union indicated their desire to appeal the ruling to the township's Board of Supervisors (the third step hearing).

The Board of Supervisors is composed of five (5) supervisors, three Republicans and two Democrats, who are the highest elected officials within the township government. Plaintiff believes that because of her political opposition [3] to three of the five supervisors, she would be unable to receive an impartial hearing. The hearing date was set but before it could take place this instant action was commenced. Plaintiff

2. There are five Board Supervisors.

3. Ms. Sellers has described herself as a right-wing Republican. She actively opposed the election of Republicans on the Board. In the

last primary election, the plaintiff distributed letters and pamphlets which questioned these supervisors' character and fitness for office.

first requested a temporary restraining order (TRO) to prevent the hearing from going forward.. The basis of the TRO was plaintiff's claim that the hearing, as currently structured, was a violation of her procedural due process rights secured through the Fourteenth Amendment. This court denied Ms. Sellers request for a TRO as well as the subsequent request for a preliminary injunction on the same grounds. In spite of losing on these two motions, the step three hearing has yet to take place. Plaintiff, shortly after denial of her injunction requests, filed an amended complaint appending civil rights claims, 42 U.S.C. §§ 1983, 1985(3), 1986, and 1988 onto her request for a declaratory judgment.

Ms. Sellers believes that the step three hearing deprives her of her property rights for three reasons: (1) the union is incompetent to protect her interest, (2) the hearing must be before a panel of unbiased supervisors and the hearing must be structured to provide for a full evidentiary trial like procedure, (3) Ms. Sellers' property right is of the nature that a pre-termination hearing is mandated prior to suspending her.

In order to remedy these deficiencies, Ms. Sellers demands that she be represented at any stage of the grievance by counsel of her own choosing; that she may be allowed to record the proceedings to form a record for appeal; and have the opportunity to present evidence and witness along with ability to cross-examine her accusors.

According to affidavits filed with this court, it appears that three out of the five demands plaintiff is requesting are currently the norm at step three hearings. Plaintiff would be allowed to present evidence, cross-examine witnesses, and her union would be present to assist her on making a record for appeal if the township's decision

was adverse. It also appears that there is no township rule which would prevent Ms. Sellers from recording the proceedings. Indeed counsel for the plaintiff has admitted that a court reporter was hired by Ms. Sellers for this very purpose.

Thus the gravamen of plaintiff's complaint is whether due process necessitates that she receives an impartial forum at this stage[4] along with the right to be represented by counsel. The defendants have consistently taken issue with the characterization of Ms. Sellers' claim as a due process problem. The union has presented the issue as whether their lack of acceding to Ms. Sellers' demands is a breach of duty to fairly represent her in the grievance proceedings. The union believes that CBA grievance procedures (steps one through four) provide the plaintiff with the minimum due process she is entitled to receive. The union also argues that the civil rights actions §§ 1983, 1985, 1986 and 1988 may not lie against them since their conduct does not amount to state action.

The township also categorizes the demands as a labor dispute. Their failure to provide an impartial forum would at best be a breach of the CBA. Finally, all the defendants assert that the plaintiff is not entitled to a pre-termination hearing as a matter of constitutional right.

A recent development between the parties has changed the posture of this action. The union and the township have agreed to waive the third step hearing and proceed directly to binding arbitration of this dispute.

Plaintiff, however, has refused to waive the third step hearing believing it is a right to which she is entitled. The court will discuss in order (1) defendants' motion to dismiss the complaint as moot; (2) whether plaintiff's constitutional rights were violat-

---

**4.** If the employee's grievance is denied by the full board of supervisors, the CBA vests, solely within the union, the decision to proceed to binding arbitration to settle the grievance. The arbitration process is governed by the Pennsylvania statutes on arbitration. 42 Pa.C.S.A. § 7301, et seq. The procedure and rules are similar to those of a civil trial in state court.

Discovery is available along with all other aspects of a full evidentiary hearing including representation by council. If the union was not to pursue the grievance to the step four hearing, Ms. Sellers has the right to challenge that decision before the Pennsylvania Labor Relations Board. 43 P.S. § 1101.903, *Veerasignham v. Sharp*, 434 A.2d 221, 61 Pa.Cmwlth. 460 (1981).

ed by not receiving a pre-termination hearing; (3) defendant's motion for summary judgment; (4) plaintiff's pendent state law claims; (5) plaintiff's motion for leave to file a second amended complaint.

## B. DISCUSSION

### I. Is the Plaintiff's Suit for Declaratory Judgment Rendered Moot by Defendants' Agreement to Proceed to Arbitration?

██ Defendants contend that their decision to waive the formality of a step three hearing and move the dispute to arbitration renders the issue of what rights are due at a step three hearing moot. "Simply stated, a case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496, 89 S.Ct. 1944, 1951, 23 L.Ed.2d 491 (1969). The court in *County of L.A. v. Davis*, 440 U.S. 625 at 631, 99 S.Ct. 1379 at 1383, 59 L.Ed.2d 642 developed a two prong test to aid courts in determining when an issue is moot. Mootness occurs when (1) interim relief or events have completely and irrevocably eradicated the effects of the violation, (2) it can be said with assurances that there is no reasonable expectation that the violation will recur.[5]

By offering Ms. Sellers the opportunity to present her grievances in a forum which allows for a full evidentiary hearing along with an impartial arbitrator, the defendants have supplied relief which eradicates the effects of the alleged violations. Her concern over the impartiality of the judges, the right to be represented by counsel, the ability to present evidence, or subpoena documents and the opportunity to cross-examine her accusors are eliminated by this new development.[6] The first prong of the test is met.

In examining this development against the second prong's criteria the court finds that the alleged violations should not reoccur since the arbitration hearing will decide the issue conclusively. One could advance the argument that if Ms. Sellers was to be suspended again, she would in all probability appear before this board at a step three hearing. Such argument is more problematic than real. That type of scenario is too remote in time to be considered an actual possibility. Even if Ms. Sellers was to be suspended again, there is no guarantee that she would appear before the board of supervisors. A consideration of the numerous possibilities reveals that such an "inquiry" is too remote in time to necessitate deciding it today.[7]

This is not the type of case that is a "traditional exception to the mootness doctrine," *U.S. v. Frumento*, 552 F.2d 534 (3d Cir.1977) (en banc) by being capable of repetition yet evading review. Because of the interim developments plaintiff presents only a hypothetical question to which this court will properly refrain from answering. Counts I, II and IV of plaintiff's amended complaint will be dismissed.

### II. Is Ms. Sellers Entitled to a Pre-Suspension Hearing? [8]

All parties to this action acknowledge that Ms. Sellers has a constitutionally protected property right which may not be abated without due process of law under the Fourteenth Amendment. The defendants argue that the CBA's grievance procedure provides full constitutional protection and that for the property interest involved,

---

**5.** *See also U.S. v. W.T. Grant Co.*, 345 U.S. 629, 632, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953); *SEC v. Medical Committee for Human Rights*, 404 U.S. 403, 92 S.Ct. 577, 30 L.Ed.2d 560 (1972).

**6.** These issues are contained in Counts I, II and IV of plaintiff's amended complaint.

**7.** Ms. Sellers could be suspended and (1) fail to lodge a grievance within the proper time frame and thus be barred from appealing it; (2) suspension could be withdrawn after the step one hearing; (3) the suspension could be withdrawn after the step two hearing; (4) since the board is comprised of elected members and since we can not predict when Ms. Sellers will appear before it, its composition may be different thus eliminating the issue of impartiality.

**8.** Count III of plaintiff's amended complaint.

Ms. Sellers is not entitled to a pre-suspension hearing before losing her limited property right.

Plaintiff has not cited any authority for her proposition that she is entitled to a pre-suspension hearing before being suspended. Ms. Sellers has argued that the procedure set forth in the CBA is so deficient that it does not meet the minimum protection guaranteed by the Fourteenth Amendment. The issue she asks the court to address is what process is due her?

The Supreme Court, in *Mathews v. Eldrige*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) enunciated three factors to be weighed in consideration of this ultimate question. *Mathews* involved the constitutionality of terminating Social Security disability payments without affording the recipient a prior evidentiary hearing. First, the court examined what private interest will be affected by the government's action; second, what is the risk of erroneous deprivation of the property interest through the procedures used and what, if any, is the probable value of additional or substitute procedural safeguards. Third, what is the government's interest in the matter. *Id.* at 334–335, 96 S.Ct. at 902–903. The court will apply these three factors to Ms. Sellers' case to determine if a pre-suspension hearing is necessitated.

### A. Ms. Sellers' Private Interest.

Ms. Sellers' private interest is similar to the petitioner in *Mathews*, that being sole interest is the uninterrupted receipt of her income pending final disposition of the grievance. Ms. Sellers' interest is limited because if she prevails the township will provide her with full backpay for her thirteen day suspension. The court does not find that thirteen days backpay is not a substantial property interest yet it is not enough that we may say, on her property interest alone, she is entitled to a pre-suspension hearing. The recipient in *Mathews* had his total income terminated permanently, nevertheless, the court held that even in light of such a substantial hardship the private interest was not enough to depart

from the principle that something less than a full evidentiary hearing is sufficient due process prior to an adverse administrative action. *Id.* at 343, 96 S.Ct. at 907.

### B. Risk of Erroneous Deprivation.

The *Mathews* decision characterized the issue of petitioner's medical eligibility as "sharply focused and easily documented." *Mathews*, at 343, 96 S.Ct. at 907. The facts supporting Sellers' suspension are also "sharply focused and easily documented." The township's policy towards excessive lateness is well documented. Ms. Sellers was provided with a written warning prior to receiving her suspension and the evidence that she was regularly late for work was documented by the official time cards. The court does not dismiss off hand Ms. Sellers' belief in the mitigating circumstances surrounding her daily employment with the police force, yet we find that the CBA grievance procedure, although "not beyond error would appear sufficiently reliable to satisfy constitutional requirements." *Barry v. Barchi*, 443 U.S. 55, 65, 99 S.Ct. 2642, 2649, 61 L.Ed.2d 365 (1979).

The township has not fabricated evidence against the plaintiff by doctoring her time cards. The plaintiff admits to excessive lateness. The grievance procedure, step one through step four, greatly minimizes the risk of erroneous deprivation by the nature, extent and scope of the process. For instance at the second, third and fourth stages of the process Ms. Sellers would be able to confront her accusers, have union representation, present evidence and cross-examine her accusers. At the step four stage, a full evidentiary hearing is provided. Most important, in balancing the risk of erroneous deprivation great emphasis must be placed upon the fact that Ms. Sellers would be entitled to full backpay if her grievance is upheld.

### C. The Government's Interest.

The Township plainly has an important interest in disciplining employees who violate the work rules. Uniform treatment of the rank and file, whether by its working

conditions or work rules, is of paramount importance to the maintenance of an efficient and harmonious office environment. The township's desire to deliver the services taxpayers have allocated financial resources towards should not be impeded due to the whims and dictates of employees who will not abide by their conditions for employment.

Our review of these factors leads this court to conclude that a pre-suspension hearing is not warranted. The township has an important interest in enforcing its work rules; prior to receiving a suspension, the employee is first warned that continued behavior of this type will result in punishment; the post-suspension procedures provides four hearings and one full evidentiary hearing and lastly the effect on the private interest is *de minimus* since the employee is entitled to recover full back pay if she prevails. We hold that due process does not require a pre-suspension hearing and Count III of plaintiff's amended complaint will be dismissed.

### III. Defendants' Motions to Dismiss the Remaining Claims Under Rule 12(b)(6).

■ Defendants have submitted various affidavits in support of their position that plaintiff has failed to state claims[9] upon which relief may be granted. The last sentence of Rule 12(b) provides that a motion to dismiss for failure to state a claim upon which relief can be granted should be converted into a motion for summary judgment whenever matters outside the pleadings are presented to and accepted by the court. *Hanna v. U.S. Veterans Admin. Hosp.*, 514 F.2d 1092, 1094 (3d Cir.1975). When presented with a motion for summary judgment the court must construe the facts in the most favorable light to the nonmoving party, resolving all doubts in its favor. *Associated Film Distribution Corp. v. Thornburgh*, 520 F.Supp. 971, 978

(E.D.Pa.1981), *rev'd on other grounds*, 683 F.2d 808 (3d Cir.1982).

### A. The 42 U.S.C. § 1983 Claim Should be Dismissed.

Ms. Sellers' § 1983 action is predicated upon the deprivation of her constitutional rights at both the third step grievance hearing and the township's failure to accord her a pre-suspension hearing. Because the court has addressed both of these issues in sections one and two above, and have ruled in both instances against the plaintiff, we will accordingly dismiss plaintiff's § 1983 actions for the reasons elaborated, *supra*.

### B. Ms. Sellers' Claims Under 42 U.S.C. § 1985(3) Must be Denied Since She is not Part of the Identifiable Class Protected by this Section.

■ Ms. Sellers' set forth a claim under § 1985(3) alleging that the union and the township have conspired to deny her equal protection of the law because of her affiliation with the right-wing portion of the local Republican party.

In order to state a cause of action under that section, Ms. Sellers must plead that (1) there is a conspiracy; (2) to deprive her of the equal protection of the laws; (3) that the union and the township committed an act in furtherance of the conspiracy and (4) she was injured in her person or property and deprived of her rights and privileges as a citizen of the United States. *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971).

It appears from Ms. Sellers' pleadings that, as a matter of law, she is not eligible to state a cause of action under this section. In construing the second requirement, the Supreme Court held that "the language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some *racial* or perhaps otherwise *class-based* invidiously discriminating animus behind the

---

**9.** Count VI of plaintiff's amended complaint states cause of action under 42 U.S.C. § 1983, § 1985(3), § 1986, and § 1988.

conspirator's action." 403 U.S. at 102, 91 S.Ct. at 1798. The Supreme Court has never held political animus satisfies the class based invidious discriminatory practice necessary to state a cause of action. In its most recent pronouncement of § 1985(3) the court, in *United Brotherhood of Carpenters and Joiners of America, Local 610, AFL–CIO v. Scott*, 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983), although finding it unnecessary to determine if this section covered conspiracy motivated by animus against a political group did state (*in dicta*):

> [T]hat it is a close question whether § 1985(3) was intended to reach any class-based animus other than animus against negroes and those who championed their cause.... Although we have examined with some care the legislative history that has been marshalled in support of the position that Congress meant to forbid wholly non-racial, but politically motivated conspiracies, we find difficult the question whether § 1985(3) provided a remedy for every concerted effort by one political group to nullify the influence of or do other injury to a competing group by use of otherwise unlawful means. To accede to that view would go for toward making the federal courts, by virtue of § 1985(3), the monitors of campaign tactics in both state and federal election, a role that the courts should not be quick to assume. If respondents' submission were accepted, the proscription of § 1985(3) would arguably reach the claim that a political party has interfered with the freedom of speech of another political party by encouraging the heckling of its rival's speakers and the disruption of the rival's meetings.

103 S.Ct. at 3359–60.

Two district courts within our own circuit have refused to extend § 1985(3) to cover politically motivated conspiracies. *See Hauptmann v. Wilentz*, 570 F.Supp. 351, 386 n. 37 (D.N.J.1983); *Nilan v. DeMeo*, 575 F.Supp. 1225 (E.D.Pa.1983). This court wishes to add its voice to the chorus which believes that § 1985(3) was not meant to regulate combat between political parties

and among the factions of which parties are composed. *Nilan* at 1227. Ms. Sellers readily admits that she views this as a political squabble. Her ability to avail herself of the courts to protect her constitutional right will not be foreclosed by this ruling today. Case law has clearly established the principal that the government may not force a public employee to relinquish their right to political association as the price of holding a public job. *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). Plaintiff's ability to protect her constitutional rights can be served by bringing claims under 42 U.S.C. § 1983 or the 14th Amendment substantive due process provision. Therefore, summary judgment will be granted in favor of the defendants on Count VI of Ms. Sellers' amended complaint. Her cause of action under 42 U.S.C. § 1986 and § 1988 must fail also. If a claimant fails to set forth a cause of action under § 1985, its claims under § 1986 must be dismissed. *Rogin v. Bensalem*, 616 F.2d 680, 696 (3d Cir.1980); *Lyon v. Temple University*, 507 F.Supp. 471, 479 (E.D.Pa.1981). Because plaintiff is without a cause of action under 42 U.S.C. §§ 1983, 1985 or 1986, her motion for attorney's fees under 42 U.S.C. § 1988 will be denied.

## IV. The Court Lacks Jurisdiction Over Ms. Sellers' Labor Law Claims

Labor agreements entered into between political subdivisions (Bensalem Township) and a union are excluded from the terms and conditions of the Labor Management Relations Act, 29 U.S.C. § 141 *et seq.*, the CBA is covered under comprehensive state labor laws known collectively as The Public Employee Relations Act (PERA) 43 P.S. § 1101.101 *et seq.*

The plaintiff charges in Count V of her amended complaint that the union is engaged in unfair labor practices by refusing to allow her representation by her own counsel at any stage of the grievance

procedure. Unfair labor practices have been defined by the legislature and are codified at 43 P.S. § 1101.1201. Section 1101.1301 of the Act vests exclusive power in the Pennsylvania Labor Relations Board (PLRB) to prevent any person from engaging in an unfair labor practice. The Supreme Court of Pennsylvania has held in the case of *Hollinger v. Dept. of Public Welfare*, 365 A.2d 1245 (1976), that if the remedy sought to be redressed is an unfair labor practice, than the PLRB is vested with exclusive original jurisdiction. *Id.* at 1249. Plaintiff's Count V will be dismissed for lack of subject matter jurisdiction.

### V. Plaintiff's Motion for Leave to Amend Her Amended Complaint

■ Ms. Sellers has been represented by counsel from the inception of her suit in this court. She now petitions us for leave to amend a third time her complaint against defendants. Although her motion does not state it explicitly, she also requests that leave be granted in order to supplement the pleadings by bringing in additional claims and parties (both defendants and plaintiffs). Leave to amend is usually granted absent undue delay by the moveant or prejudice to the defendants. Ms. Sellers has sought to add six additional counts against a host of new and previously named parties. Counts I and II of this motion are essentially additional allegations of due process violations associated with the step three hearing. Since the court will dismiss Ms. Sellers' due process claims as moot it would be improvident for us to grant leave on Counts I and II.

Counts III through VI seek to both amend the amended complaint and supplement the pleadings. Ms. Sellers is seeking to bring additional parties into the suit as both plaintiff's and defendants. The basis for these claims are a series of occurrences both prior to and after the filing of the second complaint.

■ The current defendants object strenuously to granting the plaintiff a second opportunity to amend her complaint to include facts which were known to her be-fore the filing of her original complaint and her amended complaint. Defendants have been forced to expend time, energy, financial and human resources answering Ms. Sellers' claim. Defendants, were we to grant Ms. Sellers' request, would be forced to fight their legal battles on two fronts (in arbitration and in federal court) all arising from the same act or occurrences. Plaintiff has been given two chances to state her claims and vindicate her rights. She was knowledgeable about the defendants' actions and should have incorporated them into her amended or original complaint. There comes a point in time when the paperwork must stop and the plaintiff must present her final issues. Rule 15(a) allows the court discretion in granting requests for leave. Factors the court should weigh in denying a motion for leave to amend are whether bad faith, undue delay, dilatory motives or prejudice to the defendants are present.

■ The court finds that plaintiff has delayed beyond a reasonable time in light of the circumstances of this matter and were we to grant the motion defendants would be prejudiced by being forced to duplicate their actions in two different judicial forums. Plaintiff's motion for leave to amend Counts IV, V and VI against defendants, Bensalem Township, Local 1598 and Frank Flatch will be denied.

In Count III of Ms. Sellers' second amended complaint, additional plaintiffs seek to join this action against the township by alleging a series of occurrences which are remotely related to the main issues of this dispute. If the other parties seek to rectify alleged wrongs committed against them they may do so by filing a separate complaint. Ms. Sellers' motion for leave to amend her amended complaint will be denied.

An appropriate Order follows.