**M. Karen LEES, Plaintiff,**

v.

**WEST GREENE SCHOOL DISTRICT, Rick Barnhart, Roy Barnhart, John Berdine, Ronald Lohr, Glenn Kennedy, James Helphenstine, Thomas Braddock, and William Ziefel, Defendants.**

**No. C.A. 84–2367.**

United States District Court,
W.D. Pennsylvania.

April 11, 1986.

---

Stephen Jurman, McCann, Garland, Ridall, Burke, Pittsburgh, Pa., for plaintiff.

David Neuhart, Dickie, McCamey & Chilcote, Pittsburgh, Pa., C. Robert McCall, Waynesburg, Pa., for defendants.

## OPINION

COHILL, Chief Judge.

Presently before us is Defendants' Motion to Dismiss for failure to state a claim upon which relief can be granted. Fed.R. Civ.P. 12(b). Each individual defendant was a member of the School Board of Defendant West Greene School District (the "school district") during the relevant time period. The Complaint alleges claims under 42 U.S.C. §§ 1983 and 1985 as well as under Pennsylvania common law.

*Background*

Plaintiff was employed by the school district during the 1981–1982 school year as a permanent substitute for an English teacher who was on sabbatical that year. During the spring of 1982, the teacher whose position Plaintiff was filling decided to retire rather than resume her position with the school district. Due to the retirement of the permanent English teacher, a vacancy was created in the English department.

At a school board meeting in July, 1982, the board voted to transfer a teacher from the Social Studies department to fill the English department vacancy rather than hire a new teacher for the position. Plaintiff alleges that several parents and teachers in the school district attended this board meeting and spoke out against the transfer on educational grounds. As a resident of the district and the mother of students attending schools in the district, Plaintiff states that she attended this meeting and spoke in opposition to the transfer.

According to the Complaint, a second vacancy arose in the English department for the 1982–1983 school year. Plaintiff began the school year as the permanent substitute for that position pending the appointment of a permanent teacher to the position. Despite Plaintiff's claim that she was recommended by the Administration to fill this position, another candidate was hired instead.

For the remaining portion of the 1982–1983 school year, Plaintiff was employed by the school district as a substitute teacher. However, in August, 1983, the school board voted not to approve Plaintiff as a substitute teacher for the 1983–1984 school year. Consequently, her name was removed from the list of eligible substitutes.

Again in January, 1984, the school board voted not to approve Plaintiff as a substitute teacher in the school district. Plaintiff avers that Defendant Rick Barnhart, President of the school board, made a statement at this meeting to the effect that Plaintiff, at the July 1982 school board meeting, had not conducted herself properly and did not behave in a manner appropriate for a pro-

fessional. According to the Plaintiff, President Barnhart's comments were made before the entire audience attending the school board meeting including several reporters and were subsequently published in at least two local newspapers.

*Motion to Dismiss*

When considering a motion to dismiss for failure to state a claim upon which relief can be granted, the court must construe all allegations in the complaint liberally. *Columbia Pictures Industries, Inc. v. Redd Horne, Inc.*, 749 F.2d 154, 161 (3d Cir. 1984). The burden lies with the moving party to show that, without a doubt, "Plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Hospital Building Co. v. Trustees of Rex Hospital*, 425 U.S. 738, 746, 96 S.Ct. 1848, 1853, 48 L.Ed.2d 338 (1976) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)); *Johnsrud v. Carter*, 620 F.2d 29, 33 (3d Cir.1980). This approach is mandated because, by its nature, a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) results in a determination on the merits at an early stage of Plaintiff's case. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir.1977).

*First Amendment Claim*

In her complaint, Plaintiff first alleges a cause of action under § 1983 for violations of her First Amendment right to free speech. She states that, in retaliation for speaking out against the transfer of a teacher from the Social Studies department to fill the vacancy in the English department, Defendants refused to hire her for a second vacancy which arose in the English department. In addition, they dropped her from a list of approved substitutes and refused to reinstate her on that list even though she was qualified as both a permanent and substitute teacher.

■ At the outset, we note that Plaintiff need not assert a property interest to state a claim under the First Amendment. *Mt. Healthy School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 283–84, 97 S.Ct. 568, 574–75, 50 L.Ed.2d 471 (1977). Even if

Plaintiff had no constitutional right to a permanent teaching position, or to a hearing prior to being removed from the substitute list or prior to being denied reinstatement on that list, the government cannot deny Plaintiff any benefit on the basis of her exercising a First Amendment right.

> [E]ven though a person has no "right" to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially, his interest in freedom of speech ... We have applied [this] principle regardless of the public employee's contractual or other claim to a job.

*Perry v. Sindermann*, 408 U.S. 593, 597, 92 S.Ct. 2694, 2697, 33 L.Ed.2d 570 (1972).

■ A three-step process is applied to evaluate a public employee's claim of retaliation for exercising a First Amendment right: 1) Plaintiff must show that she was engaged in a protected activity; 2) Plaintiff must show that the activity in question was a substantial or motivating factor behind the adverse employment decision; and 3) Defendant, in order to defeat Plaintiff's claim, must show by a preponderance of evidence that, absent the protected activity, Plaintiff would have suffered the same adverse decision. *Johnson v. Lincoln Univ.*, 776 F.2d 443, 450 (3d Cir.1985) (quoting *Trotman v. Board of Trustees of Lincoln Univ.*, 635 F.2d 216, 224–25 (3d Cir.1980), *cert. denied*, 451 U.S. 986, 101 S.Ct. 2320, 68 L.Ed.2d 844 (1981)). The first step, determining whether the Plaintiff was engaged in a protected activity, is a question of law, not fact. *Johnson*, 776 F.2d at 454 (quoting *Connick v. Myers*, 461 U.S. 138, 148 n. 7, 103 S.Ct. 1684, 1690 n. 7, 75 L.Ed.2d 708 (1983)).

■ In making a determination on whether certain speech is protected, a court must determine, as a threshold matter, whether the speech touches upon matters

of legitimate public concern. If it does, then the court must perform a balancing test to see if the interests of the employee, as a citizen, in commenting upon the subject at issue outweigh the interests of the government, as the employer, in promoting an efficient work environment. *Pickering v. Board of Education*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968). It is at the balancing stage where the employee's personal stake or motive becomes relevant. *Johnson*, 776 F.2d at 450.

Speech touches upon matters of public concern when it can "fairly be considered as relating to any matter of political, social, or other concern to the community." *Id.*, at 451 (quoting *Connick v. Myers*, 461 U.S. at 146, 103 S.Ct. at 1690). While matters which are mere extensions of personnel disputes involving purely personal concerns are not protected by the First Amendment, *Connick*, 461 U.S. at 148, 103 S.Ct. at 1690; *Alinovi v. Worcester School Committee*, 777 F.2d 776, 786–87 (1st Cir.1985); *Patkus v. Sangamon-Cass Consortium*, 769 F.2d 1251, 1257 (7th Cir.1985); *Day v. South Park Indep. School Dist.*, 768 F.2d 696, 697 (5th Cir.1985), mixed questions of private and public concern can be protected. *Gonzalez v. Benavides*, 774 F.2d 1295, 1301 (5th Cir.1985). Likewise, the fact that a statement evolves from a personal dispute does not preclude some aspect of it from touching upon matters of public concern. *Johnson*, 776 F.2d at 451.

Content, form and context as revealed by the whole record are important considerations which a court must evaluate in making a determination on whether certain speech is protected. *Connick*, 461 U.S. at 147–48, 103 S.Ct. at 1690–91; *Johnson*, 776 F.2d at 453. In an academic environment, speech should not be suppressed simply to avoid the expression of dissenting viewpoints which may cause some discomfort. *Johnson*, 776 F.2d at 453 (citing *Trotman*, 635 F.2d at 230). Teachers are in a unique position with regard to the operation of a school system. They are the members of the community most likely to have informed and definite opinions on questions of educational standards and academic policy. *Pickering*, 391 U.S. at 571–72, 88 S.Ct. at 1736–37. These types of questions clearly concern issues of public interest. *Id.*

In the case *sub judice*, the scant record before us provides little detail about the form of the statement made by the Plaintiff. Accepting the description in the Complaint as true, as we must for the purposes of this opinion, *Bartholomew v. Fischl*, 782 F.2d 1148, 1152 (3d Cir.1986), Mrs. Lee, as a concerned parent of children in the school district, attended a school board meeting. At this meeting, she and several other parents and teachers spoke in opposition to a board decision which they believed would adversely affect the academic standards of the school. Undoubtedly, the quality of education in public schools is a matter of public concern. The fact that Mrs. Lee could have a personal stake in the decision (if an English teacher were hired she might be considered as a candidate for permanent employment) does not convert the matter being debated to one of a purely personal nature. In fact, even if an employee's speech involves matters of largely personal concern, "that becomes relevant when the balancing is done, not in the determination whether the speech touches upon matters of public concern." *Johnson*, 776 F.2d at 451.

Having concluded that Plaintiff's speech touches upon matters of public concern, we proceed to the balancing test necessary to determine whether that speech is protected. At the outset, we recognize that the nature of the speech involved and the nature of the employment vary the deference to be accorded to the employer's judgment.

When close working relationships are essential to fulfilling public responsibilities, a wide degree of deference to the employer's judgment is appropriate ... We caution that a stronger showing may be necessary if the employee's speech more substantially involved matters of public concern.

*Connick,* 461 U.S. at 151–52, 103 S.Ct. at 1692–93; *Johnson,* 776 F.2d at 454. Thus, where, as here, the speech in question relates to an area of substantial public interest, *see Pickering,* 391 U.S. at 571–72, 88 S.Ct. at 1736–37, the employer bears a heavier burden in providing a justification for his action. *Connick,* 461 U.S. at 152, 103 S.Ct. at 1692.

The factors which the court must evaluate to determine the nature of the working relationship and how the speech in question might effect that relationship can be summarized as follows: 1) whether the employee made statements which were directed against persons with whom she "would normally be in contact in the course of [her] daily work," *Pickering,* 391 U.S. at 569–70, 88 S.Ct. at 1735–36; 2) whether the statements had an adverse impact on the ability of an immediate supervisor to maintain discipline or on the harmony between the employee and her co-workers; 3) whether, viewing the employee's work situation realistically, the employee's loyalty and confidence are necessary to a successful work relationship; and 4) whether the statement interfered with the employee's proper job performance or with the overall operation of the school. *Connick,* 461 U.S. at 166–67, 103 S.Ct. at 1700–01 (Brennan, J, dissenting) (citing *Pickering* 391 U.S. at 568–73, 88 S.Ct. at 1734–37).

Applying these factors to the present situation, we note that the Plaintiff's speech criticized a decision made by the board, the school's governing body. As a teacher, Plaintiff would not normally be in contact with the board or its members on a regular, no less a daily, basis. In light of Plaintiff's averments that some of her co-workers also attended the board meeting to oppose the transfer proposal, Plaintiff's position on that issue would not likely create an adverse impact on her relationship with her fellow teachers. Likewise, it is unlikely that Plaintiff's viewpoint would have an adverse impact on an immediate supervisor's ability to maintain discipline.

We recognize Plaintiff's allegation in her complaint that the school board President made a public statement at a later board meeting in which he accused Plaintiff, because of her earlier speech, of improper conduct and behavior inappropriate for a professional. This statement alone does not necessarily imply that the nature of the speech itself was abusive, disruptive, accusatory or otherwise of the type which would create division and controversy in the work place. *Patkus,* 769 F.2d at 1258. Rather, it only expresses an opinion based on another individual's perception of appropriate and professional conduct. The President may believe that any public criticism of board decisions by teachers is inappropriate.

As in *Pickering,* we believe the crucial factor weighing in favor of the Plaintiff is the lack of proximity in the school hierarchy between a teacher and the school board. 391 U.S. at 569–70. No persuasive argument can be made that the Plaintiff's work relationship with the school board requires her loyalty and confidence in order for her to properly function as a teacher. Certainly, it is unlikely at best that her job performance was seriously undermined by her speech. *See Sprague v. Fitzpatrick,* 546 F.2d 560 (3d Cir.), *cert. denied,* 431 U.S. 937, 97 S.Ct. 2649, 53 L.Ed.2d 255 (1977). We do not believe Defendants raised any justification which outweigh Plaintiff's free speech interests.

As a matter of law, Plaintiff's speech was protected. Factual issues inappropriate for determination by the court preclude dismissal with regard to the questions of whether Plaintiff suffered an adverse employment decision as a result of her speech and whether Plaintiff would have suffered that same adverse decision if she had not engaged in the protected activity.

*Property Interest*

Plaintiff next alleges a violation of her Fourteenth Amendment rights. She does not specify which rights she believes she was deprived of as a result of Defendant's actions. In fact, it is unclear from Plaintiff's Complaint and brief in opposition to

the present motion whether Plaintiff is cognizant of the differences between the First and Fourteenth Amendments. However, we will assume from the general tenure of Plaintiff's arguments that she is alleging deprivation of a property interest in having her name on the substitute list or in being hired to fill the vacancies in the English department.

■ A property interest in employment may arise by contract, state law or local policy and practice. *Perry v. Sinderman*, 408 U.S. 593, 602–03, 92 S.Ct. 2694, 2700, 33 L.Ed.2d 570, 580 (1972). A mere subjective expectancy, however, does not create a property interest. Plaintiff must show a legitimate claim of entitlement to state a property interest protected by the due process requirements of the Fourteenth Amendment. *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548, 561 (1972).

■ As a substitute teacher, Plaintiff had no contractual right to employment either in a substitute or permanent position. Likewise, Pennsylvania law does not create a property interest in either continued retention of an individual on a substitute list or promotion from the substitute list to a full time position. Pennsylvania does provide some due process rights to "temporary professional employe[es]," 24 Pa.Stat.Ann. § 11–1108 (Purdons 1962 & Supp.1985), as that term is defined in 24 Pa.Stat.Ann. § 11–1101(3). However, Plaintiff does not contend nor do we find that she was ever a "temporary professional employee." Consequently, the school district was entitled to terminate Plaintiff without affording her a right to a hearing. *See, Bitler v. Warrior Run School Dist.*, 62 Pa.Commw. 592, 437 A.2d 481 (1981); *Pottsville Area School Dist. v. Marteslo*, 55 Pa.Commw. 481, 423 A.2d 1336 (1980).

Plaintiff does not allege that the school district had a policy or practice with regard to retaining teachers on the substitute list which would create a protected property interest. This case is clearly distinguished on its facts from *Stana v. School Dist. of City of Pittsburgh*, 775 F.2d 122 (3d Cir.

1985) wherein the Court found a property interest in a teacher's position on an eligibility list. In *Stana*, the school district had a policy which was communicated to its teacher and which provided no room for discretionary removal of teachers from its eligibility list. *Id.*, at 126. The teacher's position on the list entitled her to preferred appointment, promotion and transfer opportunities. Removal could not be effected without notice and an opportunity to be heard. *Id.*, at 123–24. Unlike the teacher in *Stana*, Plaintiff does not contend, nor does she state facts from which this Court could surmise, that the school district had a policy with regard to its substitute list which would entitle her to preferred consideration for permanent positions or to notice and an opportunity to be heard prior to removal from the list.

Since we find no property interest created by contract or state law, and no implied rights created through local or school district policy, we must dismiss Plaintiff's Fourteenth Amendment claim.

*Slander*

Plaintiff alleges that the school board President made a defamatory statement about her during the January, 1984 board meeting at which the board voted not to approve Plaintiff for the substitute teachers' list. The statement attributed to the board President criticized Plaintiff's conduct at the July, 1982 school board meeting as improper and inappropriate for a professional. According to the Complaint, at least two newspapers who had reporters assigned to cover the board meeting published the President's comment. Plaintiff claims that the comment harmed her reputation both personally and professionally and thus constitute slander per se. Defendant argues that the statement at issue is pure opinion incapable of defamatory meaning.

Pennsylvania has adopted the definition of defamation set forth in the Restatement (Second) of Torts § 559 (1977); *Redco Corp. v. CBS, Inc.*, 758 F.2d 970, 971 (3d Cir.1985).

A communication is considered defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.

*Corabi v. Curtis Publishing Co.*, 441 Pa. 432, 442, 273 A.2d 899, 904 (1971); *Cosgrove Studio and Camera Shop, Inc. v. Pane*, 408 Pa. 314, 318, 182 A.2d 751, 753 (1962). Under Pennsylvania law, plaintiff has the burden of proving, when the issue is properly raised:

1) The defamatory character of the communication.

2) Its publication by the defendant.

3) Its application to the plaintiff.

4) The understanding by the recipient of its defamatory meaning.

5) The understanding by the recipient of it as intended to be applied to the plaintiff.

6) Special harm resulting to the plaintiff from its publication.

7) Abuse of a conditionally privileged occasion.

42 PA.Cons.Stat.Ann. § 8343. *Marcone v. Penthouse International Magazine for Men*, 754 F.2d 1072, 1077–78 (3d Cir.), *cert. denied*, —— U.S. ——, 106 S.Ct. 182, 88 L.Ed.2d 151 (1985); *Agriss v. Roadway Express, Inc.*, 334 Pa.Super. 295, 483 A.2d 456, 461 (1984). Whether or not the speech is defamatory in nature or capable of defamatory meaning is a matter of law for the court to decide. *Redco*, 758 F.2d at 971; *Marcone*, 754 F.2d at 1078; *Thomas Merton Center v. Rockwell International Corp.*, 497 Pa. 460, 442 A.2d 213, 214 (1981), *cert. denied*, 457 U.S. 1134, 102 S.Ct. 2961, 73 L.Ed. 1351 (1982). If the court makes a determination that the speech could be understood as defamatory, then it is for a jury to decide whether it was in fact understood as such by the recipient. *Agriss*, 483 A.2d at 461.

For a statement of opinion to be defamatory in nature, plaintiff must demonstrate to the court that the opinion stated implies the existence of undisclosed defamatory facts. *Braig v. Field Communications*, 310 Pa.Super. 569, 456 A.2d 1366 (1983), *cert. denied*, 466 U.S. 970, 104 S.Ct. 2341, 80 L.Ed.2d 816; *Beckman v. Dunn*, 276 Pa.Super. 527, 419 A.2d 583, 587 (1980). *See* Restatement (Second) of Torts § 566. A statement of "pure" opinion, no matter how unjustified, unreasonable or derogatory, is not defamatory. *See Hoover v. Peerless Publications, Inc.*, 461 F.Supp. 1206, 1209–10 (E.D.Pa.1978). Restatement (Second) of Torts § 566 comment c.

Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscious of judges and juries but on the competition of other ideas.

*Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339–40, 94 S.Ct. 2997, 3006–07, 41 L.Ed.2d 789, 805 (1974).

In the present case, the President of the school board merely expressed his opinion on Plaintiff's behavior at the July, 1982 board meeting. His statement did not imply the existence of any undisclosed defamatory facts. It implies nothing beyond his own opinion that Plaintiff did not act in a manner proper and appropriate for a teacher. This impression of Plaintiff's professional conduct is, by its nature, subjective and based on nothing more than the President's own perceptions of Plaintiff's actions at that meeting. *See Beckman*, 419 A.2d at 587 (evaluation of academic performance is necessarily subjective and akin to opinion). Plaintiff must rely on the opinion of others present at that meeting to rebut the President's statement.

Since we find the communication at issue to be pure opinion incapable of defamatory meaning, we must grant dismissal on this count. We note for the record that Plaintiff's slander per se argument under § 573 of the Restatement (Second) of Torts cannot save her defamation count. Slander per se, as defined in § 573, provides only that, if the statement is in fact defamatory and does impugn plaintiff's professional reputation, plaintiff need not prove special harm. Statements of pure opinion which

are not defamatory, cannot be slanderous per se. *See Gertz,* 418 U.S. at 339–40, 94 S.Ct. at 3006–07.

*Pennsylvania Constitutional Claim*

In addition to Plaintiff's § 1983 claim based on a violation of her First Amendment rights, Plaintiff alleges in Count V of her Complaint that Defendants "acted improperly and unlawfully, in violation of the Constitution and law of the Commonwealth of Pennsylvania." Plaintiff apparently believes that state law provides a separate cause of action for violations of free speech. Brief in Opposition to Motion to Dismiss, at P. 6. In support of this count, Plaintiff cites only two cases, *Sacks v. Commonwealth Dept. of Public Welfare,* 502 Pa. 201, 465 A.2d 981 (1983) and *In Re Chalk,* 441 Pa. 376, 272 A.2d 457 (1971); neither of these discuss the merits of a free speech action under the state constitution or state law. Both cases are decided on the basis of the First Amendment alone.

■ The Pennsylvania constitution, Article I, § 7, contains a free speech clause similar to the First Amendment. It provides Plaintiff with no greater rights or protections than those guaranteed by the First Amendment. Likewise, it contains no provision, express or implied, which creates a private right of action for violations of an individual's right to free speech. *Pendrell v. Chatham College,* 386 F.Supp. 341, 344 (W.D.Pa.1974). We have found no Pennsylvania case law or statute which implies a private right of action under the state Constitution. Since Plaintiff would have no greater rights under Article I, § 7 than under the First Amendment, charging a jury on both would only prove confusing and redundant. We can glean no other basis to support Plaintiff's claim under Count V from either the Complaint, Plaintiff's brief or Pennsylvania law. Thus, we will also dismiss Count V.

*§ 1985(3)*

■ In the jurisdictional section of her Complaint, Plaintiff mentions § 1985(3). Although she does not again mention that section specifically, she does refer to a conspiracy to deprive her of "the equal protection and privileges of the law" in Count IV. We presume this count is based on § 1985(3). To state a claim under this section, Plaintiff must plead 1) the existence of a conspiracy; 2) to deprive her of the equal protection of the law; 3) which conspiracy was motivated by racial or other class-based invidiously discriminatory animus; 4) that Defendants committed an overt act in furtherance of the conspiracy and; 5) that Plaintiff was injured in her person or property and deprived of rights and privileges guaranteed by the constitution. *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971); *Sellers v. Local 1598, Dist. Council 88, American Fed'n of State, County and Mun. Employees,* 600 F.Supp. 1205, 1211 (E.D.Pa.1984); *Armstrong v. School Dist. of Philadelphia,* 597 F.Supp. 1309, 1313 (E.D.Pa.1984).

■ Even reading the allegations of Plaintiff's Complaint liberally, we cannot discern facts from which we could infer any class-based invidiously discriminatory animus. *Jennings v. Shuman,* 567 F.2d 1213, 1221 (3d Cir.1977). At best, Plaintiff has alleged facts supporting a conspiracy against her based on an opposing view which she and others expressed about a school board policy decision. While Plaintiff and the others espousing her viewpoint may constitute a class, the Supreme Court has held that § 1985(3) cannot be construed broadly enough to reach such animus. *Carpenters v. Scott,* 463 U.S. 825, 834–39, 103 S.Ct. 3352, 3358–61, 77 L.Ed.2d 1049, 1058–61 (1983). Therefore, we conclude that Count IV of Plaintiff's Complaint must also be dismissed.

*Conclusion*

We have carefully considered each possible claim raised in the Complaint. For the reasons stated above, we will deny Defendant's Motion to Dismiss with respect to the § 1983 claim based on the First Amendment but grant the Motion as to all other claims.