Loretta E. **STANA**, Appellant,

v.

**SCHOOL DISTRICT OF the CITY OF PITTSBURGH and Charles N. Allebrand.**

No. 85–3004.

United States Court of Appeals, Third Circuit.

Argued July 19, 1985.

Decided Oct. 22, 1985.

Joseph S. Hornack (argued), Edward Jaffee Abes & Associates, P.C., Pittsburgh, Pa., for appellant.

David H. Dille (argued), Robert J. Stefanko, Board of Public Educ. School Dist. of Pittsburgh, Pittsburgh, Pa., for appellee.

Before SEITZ, HIGGINBOTHAM and SLOVITER, Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

### I.

Appellant Loretta E. Stana brought this suit under 42 U.S.C. § 1983 (1982), alleging that the defendants, the School District of Pittsburgh and Charles N. Allebrand, Assistant Director of Personnel for the District, violated her constitutional rights to due process of law. We must decide whether the district court erred in granting summary judgment for defendants. *See Stana v. School District of Pittsburgh,* 598 F.Supp. 842 (W.D.Pa.1984).

The following facts are undisputed: Stana was certified to teach chemistry and general science by the Pennsylvania Department of Education in 1972. On June 1, 1980, she applied for a teaching position with the Pittsburgh School District. Under Article XXI of the Public School Code of 1949, governing School Districts of the First Class (Philadelphia and Pittsburgh only), the Superintendent of Schools must keep eligibility lists "arranged as nearly as possible in the order of rank or standing". 24 Pa.Stat.Ann. § 21–2110 (Purdon 1962). Moreover, "no person shall be appointed, promoted, or transferred to any educational position in the public school system ... whose name does not appear among the three highest names upon the proper eligible list." *Id.*

Pursuant to the policies of the Pittsburgh School District, a teacher's rank on the eligibility lists is determined by the total of the teacher's scores from four sources: the National Teacher Exam "Core Battery" test; the "Specialty Area" tests; the score s/he receives from an interview by a panel of administrators; and the score s/he receives on an evaluation by a credentials committee. An applicant with a score of 80 or higher is placed on the appropriate list.

Stana had a score of 89 and was notified on June 30, 1981 that she would be placed on the eligibility list for chemistry and science on August 27. From August 27, 1981 until October 21, 1982, Stana was one of the top three names on the list. A teacher usually remains on the list for four years unless s/he fails to respond to inquiries regarding present status.

Allebrand, who had the responsibility to update the files of persons on the list with current information, testified that sometime in late 1981 or early 1982, he noticed from a notation in the file that Stana was teaching at Seton-LaSalle High School, a private Catholic school. He asked that school's Principal, Brother Joseph Mahon, for his evaluation and was told that Stana's teaching performance was unsatisfactory. Brother Joseph gave the same response in writing on a confidential inquiry form dated March 16, 1982.

Allebrand took no action with respect to this negative evaluation, which was apparently unprecedented in his experience, until October 1982, when he convened a committee to re-evaluate Stana's credentials. Before then, however, in September 1982, a chemistry position became open at Alderdice High School. Only two names were on the relevant list. One was Stana's; the other's was someone Allebrand knew was unavailable. Because of Brother Joseph's negative evaluation, Allebrand decided, after discussions with his supervisor, Dr. Galligan, to bypass Stana for the position and to advertise the opening. The position was filled shortly thereafter by Susan Jackson, who had not been on the eligibility list. Although Stana technically remained on the eligibility list until after the School District hired Jackson, Allebrand bypassed Stana, relying on "some research done in [the District's legal department that] if there is no one available on the eligibility list, then the personnel officer may seek [a qualified candidate in] any way possible." App. at 67.

Stana contacted Allebrand's office on September 17 concerning the advertisement and was told that the position was filled. Her attempts to reach Allebrand and Galligan were unsuccessful. At that time, she did not know that the person hired was not on the eligibility list.

In late October 1982, Stana was notified in writing by Allebrand that, pursuant to a credentials committee re-evaluation, her name had been removed from the eligibility list. At a meeting on November 2, 1982, Allebrand told Stana that he had received negative "confidential information" about her. Stana, who inferred that the information came from Brother Joseph, told Allebrand that her contract at Seton-LaSalle for the 1982–1983 school year was not renewed by Brother Joseph so that he would have a teaching position in which to place a football coach, who was thereafter hired by the school as a chemistry teacher. Stana was not actually informed by the School District

that the "confidential information" came from Brother Joseph until December 1983.

Stana's § 1983 complaint alleges that the District's failure to provide her with notice and an opportunity to be heard concerning the negative evaluation prior to its decision to bypass her for the Alderdice teaching position and to remove her from the list violated the Due Process Clause of the Fourteenth Amendment.

## II.

In granting the defendants' motion for summary judgment, the district court assumed without deciding that Stana was deprived of an interest constituting "property" within the meaning of the Due Process Clause. The court characterized Allebrand's action in appointing someone from outside the top three positions on the eligibility list as "a random, unauthorized act by a state employee." 598 F.Supp. at 844. The court construed *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), and *Cohen v. City of Philadelphia,* 736 F.2d 81 (3d Cir.), *cert. denied,* — U.S. ——, 105 S.Ct. 434, 83 L.Ed.2d 360 (1984), as holding that there is no violation of due process when the deprivation takes place as a result of "an unauthorized failure of state agents to follow prescribed procedures" and "the state provides a forum within which redress may be had." 598 F.Supp. at 844. The court noted that, "there is no claim that Plaintiff did not have access to the state courts, that Mr. Allebrand was acting according to a state policy in denying Plaintiff a position as a teacher, or that the state eligibility system is itself constitutionally defective or insufficient." *Id.* The court then concluded that

the defendants were entitled to judgment as a matter of law, albeit without prejudice to Stana's right "to seek redress in the appropriate Pennsylvania forum." *Id.*

Stana now appeals, arguing, *inter alia,* that the present case is distinguishable from *Parratt* because here predeprivation notice and some opportunity to be heard was not impracticable.

## III.

█ The predicate for requiring a governmental entity to comply with the rudiments of procedural due process is a determination that some constitutional interest is at stake. In this case, Stana's retention on the eligibility list, which was a *sine qua non* for her placement in a teaching position with the Pittsburgh School District, implicated a constitutional "property" interest created by state law.[1] The evidence establishes that Stana had a sufficient "legitimate claim of entitlement" to her place on the eligibility list so that it could not be "arbitrarily undermined", the essence of a property interest. *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

█ The "property" that is safeguarded by the due process clause of the Fourteenth Amendment may be "created ... by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.* "[T]he types of interests protected as 'property' are varied and, as often as not, intangible, relating 'to the whole domain of social and economic fact.'" *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 430, 102 S.Ct.

---

1. Removal from an eligibility list for reasons other than objective test scores could be viewed as a determination that reflects adversely on the character of the person affected. *See Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972). Viewed in that light, it could implicate the liberty interest in following a chosen profession, *Hampton v. Mow Sun Wong,* 426 U.S. 88, 102, 96 S.Ct. 1895, 1905, 48 L.Ed.2d 495 (1976), which the Supreme Court has repeatedly held can be denied only after the individual has been

afforded the core content of procedural due process. *See, e.g., id.* at 103, 96 S.Ct. at 1905; *Willner v. Committee on Character and Fitness,* 373 U.S. 96, 102–04, 83 S.Ct. 1175, 1179–81, 10 L.Ed.2d 224 (1963); *Goldsmith v. United States Board of Tax Appeals,* 270 U.S. 117, 123, 46 S.Ct. 215, 217, 70 L.Ed. 494 (1926). In this case, plaintiff has not alleged publication, and thus could not claim deprivation of a liberty interest. *See Cleveland Board of Education v. Loudermill,* —— U.S. ——, 105 S.Ct. 1487, 1496 n. 13, 84 L.Ed.2d 494 (1985).

1148, 1155, 71 L.Ed.2d 265 (1982) (quoting *National Mutual Insurance Co. v. Tidewater Transfer Co.*, 337 U.S. 582, 646, 69 S.Ct. 1173, 1209, 93 L.Ed 1556 (1949) (Frankfurter, J., dissenting)); *cf. Perri v. Aytch*, 724 F.2d 362, 364 (3d Cir.1983). Property interests are often expressly created by state statutes or regulations, but they can also arise from written or unwritten state or local government policies or from "mutually explicit understandings" between a government employer and employee. *See Perry v. Sindermann*, 408 U.S. 593, 601–02, 92 S.Ct. 2694, 2699–2700, 33 L.Ed.2d 570 (1972). In all cases, the relevant inquiry is whether the claimant has a "legitimate claim of entitlement". *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709.

In this case, Stana claims that she had "a legitimate claim of entitlement to proper classification on [the] eligibility list" maintained by the School District, Appellant's Brief at 17, which constitutes an adequate property interest to trigger due process analysis. She contends that the Pennsylvania Public School Code, 24 Pa.Stat.Ann. § 21–2110 (Purdon 1962), and the policies of the Pittsburgh School District create a "mutually explicit understanding" that a person who has earned a place on the eligibility list will not be removed from the list for four years. Complaint ¶ 14, App. at 7.

█ We cannot agree that a property interest can be grounded in section 21–2110. That section states only that the School District cannot hire for a permanent position anyone whose name is not among the three highest on the relevant eligibility list.[2] That section addresses how the School District must fill its teaching positions; it does not provide a method for determining eligibility or state the length of time that a teacher will remain on the eligibility list. Hence, it is insufficient to confer on Stana a property right to remain on the eligibility list.

On the other hand, it is uncontested on this record that the School District and Allebrand, the official responsible for the eligibility list on which Stana's name appeared, had an established policy for placement and rank on the list and for maintenance of names on that list for a specified period of time. It is also undisputed that Stana originally met the criteria for placement on the list. Allebrand testified at his deposition that the School District indicates to the teacher, "that if a person places on the list, their name will remain on that list for at least two years." App. at 40. He further stated that to keep the list current, people who no longer demonstrate an active interest are removed after two years but interested persons remain on the list for four years. *Id.* This is consistent with Stana's testimony that she was informed by another school official that names remain on the eligibility list for four years. Stana's name was removed from the list without notice and an opportunity to be heard before two years had passed.

It is evident that remaining on the eligibility list, which was a prerequisite to a teaching position, was a "legitimate entitlement" that the School District had created through the policies it promulgated to implement the state statute on teacher hiring. As such, it represented both an existing policy or rule and an explicit understanding sufficient to constitute a property interest,

---

2. Section 21–2110 provides as follows:

§ 21–2110. Eligible lists of persons qualified to teach; appointments

Eligible lists, properly classified containing the names of persons who have received certificates of qualifications to teach, and arranged as nearly as possible in the order of rank or standing, shall be kept in the office of the superintendent of schools, and shall be open to inspection by members of the board of public education, associate and district superintendents, and principals.

Except as superintendent of schools, associate superintendent, assistant district superintendent, director of a special branch, or as a principal of a high school, junior high school, state teachers' college, or vocational school, no person shall be appointed, promoted, or transferred to any educational position in the public school system, in school districts of the first class, whose name does not appear among the three highest names upon the proper eligible list. No person holding a position at the time of the passage of this act shall be displaced by the above provisions.

*see Perry v. Sindermann,* 408 U.S. at 601–03, 92 S.Ct. at 2699–2700, which triggered the requirement for an inquiry that comported with procedural due process.[3]

### IV.

Stana was given no prior notice or any opportunity to be heard either before her name was bypassed (an effective removal from the eligibility list under the circumstances here) or before her name was formally removed from the eligibility list. Thus, unless this case falls within the extremely narrow lines reserved for the limited situations where the hearing may properly be postponed until after the deprivation has been effected, *see, e.g., Matthews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), defendants violated Stana's due process rights. The factors generally considered in determining whether a pretermination hearing is required are "the private interest that will be affected by the official action; ... the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." *Id.* at 335, 96 S.Ct. at 903.

In a recent opinion, *Cleveland Board of Education v. Loudermill,* —— U.S. ——, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), the Supreme Court applied the *Matthews* inquiry in the context of public employment. Before the Court were two cases consolidated for disposition. In one, Loudermill, a security guard, was fired by his employer, the Board of Education, for failing to reveal a prior felony conviction. He was given no notice or opportunity to respond. Had one been offered, he would have contended that he thought the conviction was for a misdemeanor, which is what he stated at a post-termination hearing mandated by Ohio law. In the companion case, Donnelly, a bus mechanic for the Board of Education, was fired when he failed to pass an eye examination, again without the opportunity to respond. The exam he failed was related to driving school buses, not repairing them. The Cleveland Civil Service Commission eventually ordered Donnelly reinstated, but without backpay.

The district court dismissed the § 1983 actions brought by both men, holding that the plaintiffs were required to follow the procedures for post-termination discharge specified by the state statute and local ordinances. The court held that those procedures (which did not include a pretermination hearing) afforded all the process due.

In holding that the district court erred, the Supreme Court noted: "An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.' *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313, [70 S.Ct. 652, 656, 94 L.Ed. 865] (1950)." *Id.* at 1493. The Court continued, "We have described 'the root requirement' of the Due Process Clause as being 'that an individual be given

---

**3.** This case is distinguishable from other "eligibility list" cases because here a place on the eligibility list was the central factor in the School District's communicated policy to award teaching positions. *See Hermes v. Hein,* 742 F.2d 350, 355 (7th Cir.1984) (policy to promote top candidate on eligibility list not communicated either to the police department as a whole or to the plaintiffs); *Burns v. Sullivan,* 619 F.2d 99, 104 (1st Cir.), *cert. denied,* 449 U.S. 893, 101 S.Ct. 256, 66 L.Ed.2d 121 (1980) (no property interest in eligibility list because promoting officer had substantial discretion to consider subjective factors); *Griffin v. Carey,* 547 F.Supp. 449, 453–54 (S.D.N.Y.1982) (plaintiff removed from statutorily required eligibility list for firefighters had no property interest in the list because statute authorized removal for his misrepresentations on employment application). *See also Lavash v. Kountze,* 604 F.2d 103, 105 (1st Cir.1979) (assuming without deciding that statute requiring promotion from eligibility list may create property interest); *cf. Taplick v. City of Madison Personnel Board,* 97 Wis.2d 162, 293 N.W.2d 173, 178 (1980) (ordinance stating reasons why an applicant may be refused certification for job eligibility does not create a property right to be certified as eligible in the absence of those reasons).

an opportunity for a hearing *before* he is deprived of any significant interest.' *Boddie v. Connecticut,* 401 U.S. 371, 379 [91 S.Ct. 780, 786, 28 L.Ed.2d 113] (1971) (emphasis in original); *see Bell v. Burson,* 402 U.S. 535, 542 [91 S.Ct. 1586, 1591, 29 L.Ed.2d 90] (1971)." *Id.*

In undertaking the balancing of the factors identified in *Matthews,* the Court referred to "the significance of the [employee's] private interest in retaining employment" and the "obvious value" in giving the employee "some opportunity ... to present his side of the case ... [to] reach[] an accurate decision." *Id.* at 1494. The Court explained that "[t]he governmental interest in immediate termination d[id] not outweigh these interests." *Id.* at 1495.

The essential requirements of the neglected due process in that case were "notice and an opportunity to respond." As Justice White, writing for the Court, reiterated: "The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement." *Id.* at 1495.

■ Although Stana was not in precisely the same position as the *Loudermill* plaintiffs who were already public employees, that case provides us with significant guidance. Stana's interest in remaining on the eligibility list was analogous to the interest in retaining employment at stake in *Loudermill,* since it provided the only means of access to a public school teaching position. It is a significant private interest, since the Court "ha[s] frequently recognized the severity of depriving a person of the means of livelihood." *Id.* at 1494.

Holding a hearing prior to such action will not impose an undue administrative burden because, as Allebrand admitted, removal of a person from the eligibility list

for such reason is a rare occurrence. *See* App. at 59–61. The School District has suggested absolutely no reason why pretermination notice and a hearing was not possible or desirable.[4] No emergency involving the public welfare was at issue, *see, e.g., Ewing v. Mytinger & Casselberry, Inc.,* 339 U.S. 594, 70 S.Ct. 870, 94 L.Ed. 1088 (1950); *North American Cold Storage Co. v. Chicago,* 211 U.S. 306, 29 S.Ct. 101, 53 L.Ed. 195 (1908), nor was this a case "where the potential length or severity of the deprivation does not indicate the likelihood of serious loss and where the procedures underlying the decision to act are sufficiently reliable to minimize the risk of erroneous determination." *See Memphis Light, Gas & Water Division v. Craft,* 436 U.S. 1, 19, 98 S.Ct. 1554, 1565, 56 L.Ed.2d 30 (1978). The conclusion that Stana was deprived of her rights to procedural due process is inescapable.[5]

## V.

In granting summary judgment for the defendants, the district court did not undertake the *Matthews* balancing. Instead, that court concluded that Stana had not made out a § 1983 violation. The court read *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), as holding that "a deprivation of property does not rise to the level of a constitutional violation so long as the state provides a forum within which redress may be had." 598 F.Supp. at 844. It also read *Cohen v. City of Philadelphia,* 736 F.2d 81, 84 (3d Cir.), *cert. denied,* — U.S. —, 105 S.Ct. 434, 83 L.Ed.2d 360 (1984), to mean that if state agents are guilty of "unauthorized failure ... to follow prescribed procedures", there is no federal claim. *Id.* It thus granted defendants' motion for summary judgment.

---

**4.** In fact, the sparseness of the School District's arguments was duplicated by the sparseness of its appellate brief, five pages, of which three had only one sentence and the remaining two contained the total of its argument.

**5.** Because Stana was not provided even the informal pretermination hearing before the cre-

dentials committee that the *Loudermill* majority mandated, we need not reach the issue whether a more formal pretermination hearing would be necessary in Pennsylvania, which does not appear to provide the full post-termination adversarial hearing that was available in Ohio. *See Loudermill,* 105 S.Ct. at 1495.

We conclude that the district court erred. Nothing in *Parratt v. Taylor* suggests that when a pretermination hearing is required under the *Matthews* balancing, there is nevertheless no "deprivation" in a constitutional sense as long as the state provides some forum for post-deprivation redress. In *Parratt*, the Court focused on the question of "what process is due a person when an employee of a State negligently takes his property." 451 U.S. at 537, 101 S.Ct. at 1914. The Court stated that in "a situation such as the present one involving a tortious loss of a prisoner's property as a result of a random and unauthorized act by a state employee ... it is not only impracticable, but impossible, to provide a meaningful hearing before the deprivation." *Id.* at 541, 101 S.Ct. at 1916. Thus, the situation was like those in "[t]he prior cases which have excused the prior-hearing requirement [and which] rested in part on the availability of some meaningful opportunity subsequent to the initial taking for a determination of rights and liabilities." *Id.*

Here, of course, a pretermination hearing was neither impracticable nor impossible. Thus, even if Pennsylvania had a procedure that might have provided Stana some redress, an issue which the parties dispute, that does not diminish the nature of the deprivation, which was the denial of procedural due process to Stana at a meaningful time before her name was effectively removed from the list.

This conclusion is reinforced by the Court's more recent decision in *Cleveland Board of Education v. Loudermill*, —— U.S. ——, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). Both plaintiffs there were held to have stated viable § 1983 claims notwithstanding the availability of state judicial review of the adverse Civil Service Commission. The opinion of the Court express-ly refers to plaintiffs' choice to bring the federal § 1983 suit instead of pursuing the state court route, 105 S.Ct. at 1490. Yet none of the opinions in *Loudermill*, including the dissenting opinion of Justice Rehnquist, the author of *Parratt*, cites to *Parratt*. It is apparent, therefore, that *Parratt* does not stand for the broad proposition ascribed to it by the district court, *i.e.*, that there is no deprivation of procedural due process as long as there is a state remedy.[6]

The district court relied in part on *Cohen v. City of Philadelphia*. In *Cohen*, a Philadelphia policeman, who was fired after being charged with burglary, was later acquitted of all criminal charges. The Civil Service Commission ordered his reinstatement, but without backpay. Cohen, instead of pursuing an appeal of the Commission's decision to the Philadelphia Court of Common Pleas and onward through the state appellate system, chose to file a § 1983 suit. The district court granted summary judgment in defendants' favor on the ground that Cohen had sufficient post-deprivation remedies in state court, citing *Parratt v. Taylor*, and this court affirmed. 736 F.2d 81.

The facts in *Cohen* thus parallel those in *Donnelly*, one of the companion cases decided in *Loudermill*. Cohen and Donnelly were in the same posture. Each had been reinstated without backpay and each had available a possible route to appeal the adverse administrative decision through the state courts, but chose instead to file his action under § 1983 in federal court. The Supreme Court did not treat the availability of the state judicial route as defeating Donnelly's § 1983 claim.[7] Instead, the Court expressly held that due process still required that the defendant Board of Education provide a hearing before termination of employment. It follows that to the ex-

**6.** Since the existence *vel non* of a state forum for redress is not relevant to our determination, we need not decide the scope and effectiveness of Pennsylvania's remedies.

**7.** The Court of Appeals opinion in *Loudermill* treated the argument that Donnelly should have followed the procedure established under state law not as a *Parratt* issue but as an effort to impose an exhaustion requirement, and rejected that claim under the authority of *Patsy v. Board of Regents*, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). *See Loudermill v. Cleveland Board of Education*, 721 F.2d 550, 554–55 (6th Cir.1983).

tent that anything in *Cohen* suggests to the contrary, it has been superseded by the Supreme Court's subsequent precedent.[8]

The district court characterized the bypassing of Stana's name on the eligibility list as the unauthorized act of Allebrand. At oral argument before us, counsel for the School District conceded that Allebrand had discretion to act in that manner, an issue we discuss *infra* in another context. In any event, the court's reference to a "random and unauthorized" act was misplaced.

The genesis of the "random and unauthorized act by a state employee" language is the portion of *Parratt v. Taylor*, 451 U.S. at 541, 101 S.Ct. at 1916, where it was used in considering whether it was practicable for the state to give the plaintiff predeprivation process. As Justice Rehnquist explained in *Parratt*, where random and unauthorized acts have deprived the plaintiff of property,

> the State cannot predict precisely when the loss will occur. It is difficult to conceive of how the State could provide a meaningful hearing before the deprivation takes place. The loss of property, although attributable to the State as action under "color of law," is in almost all cases beyond the control of the State.

*Id.* On the other hand, if it were possible for the state or its entity to know that the deprivation was about to occur, the state could have provided predeprivation process. Patently, when the acts at issue were those of an official in a supervisory position, acting within the area of his authority, the governmental entity was in a position to provide some predeprivation process. *Cf. Hudson v. Palmer*, — U.S. —, 104 S.Ct. 3194, 3204, 82 L.Ed.2d 393 (1984) (distinguishing between the act of the state and an unauthorized employee). As the Supreme Court's recent decision in *Brandon*

*v. Holt*, — U.S. —, 105 S.Ct. 873, 878, 83 L.Ed.2d 878 (1985), made clear, the actions of an official acting in his or her official capacity are to be equated with the actions of the city itself.

When viewed in this context, it is evident that Allebrand, as the authorized School District official with supervision of the relevant eligibility lists, was acting for the School District both when he effected the de facto removal of Stana from the eligibility list by bypassing her name, and when he convened the credentials committee some seven months after receiving the adverse written reference. Furthermore, he had checked with and received the approval of his superior to bypass Stana. Defendants have suggested nowhere else he could have turned.

■ To summarize, since it is not practicable or possible for a governmental entity to provide predeprivation procedural due process when an act is random or unauthorized, the only possible remedy is through effective post-deprivation redress. The Constitution does not require that which it is impossible to provide. On the other hand, if the governmental entity could have, but did not, provide predeprivation procedures, a § 1983 action complaining of the lack of procedural due process may be maintained in federal court, notwithstanding the availability of state judicial routes as well.

## VI.

It follows from the foregoing that summary judgment for the defendants should not have been entered. We cannot tell from the sparse record before us whether there are any remaining facts in dispute relevant to the issue of the School District's liability,[9] as distinguished from the issue of Stana's damages.

---

**8.** Our authority to align this court's jurisprudence with Supreme Court teaching is clear. *Rubin v. Buckman*, 727 F.2d 71, 74 (3d Cir.1984) (Garth, J., concurring). We make no comment on any other aspect of *Cohen* or on its holding "that *substantive* mistakes by administrative bodies in applying local ordinances do not cre-

ate a federal claim so long as correction is available by the state's judiciary." 736 F.2d at 86 (emphasis added).

**9.** There appears to have been no plea of qualified immunity for acts done by Allebrand in his individual capacity. Immunity would be inap-

Stana has argued that she had a "property right to be appointed by the Pittsburgh School District to the temporary professional teaching position at Alderdice High School" because she was the only available person on the eligibility list when a teaching position opened in her major field. Appellant's Brief at 17. Since this is an issue of law that will face the district court on remand in connection with the measure of damages, we consider it here.

Stana argues that 24 Pa.Stat.Ann. § 21–2110, which provides that all teaching positions in the School District shall be filled from the three highest ranking people on the list, see note 2 supra, gives her a substantive right to the position itself. She construes this statutory provision as depriving the School District officials of any discretion to go beyond the list as long as someone on the list is available.

■ We do not think that the Supreme Court of Pennsylvania would construe section 21–2110 as compelling that result. We recognize that the statute is couched in mandatory language but several considerations impel us to conclude that, nonetheless, the School District retains some discretion to bypass one or more names from the list in an appropriate situation.

The purpose of the Public School Code is to establish a "thorough and efficient system of public education." Danson v. Casey, 33 Pa.Cmwth. 614, 617, 382 A.2d 1238, 1240 (1978), aff'd, 484 Pa. 415, 399 A.2d 360 (1979). That purpose could not be served if the School District were required to hire as a teacher someone about whom it received negative information after that person's name was placed on the eligibility list. For example, if the individual had been convicted of a crime or if the School District learned that there was false information originally given by the applicant, it would be free not to appoint that individual even though s/he was the only one on the list. Similarly, receipt of significant adverse information regarding the individual's teaching ability would be a valid basis to withhold the appointment. Certainly the School District officials must retain some discretion to make decisions in the best educational interest of the schools and the pupils.

The Pennsylvania decision in Godfrey v. Penns Valley Area School District, 68 Pa.Cmwlth. 166, 449 A.2d 765 (1982), although not on the same issue, reflects a construction of the Public School Code that permits retention of some flexibility by the School Districts. Godfrey, looking only to the language of the Code, argued that certain teachers must be transferred when the professional staff was decreased due to lower student enrollment. The court disagreed with that literal construction. Significantly for our purpose, it observed that even were that the required reading of the language, "the practicality of such realignment and its effect on the educational process within the school district must be considered." Id. at 769.

To the same effect, if the School District had new information that the only person on an eligibility list was no longer a satisfactory candidate, we believe that the Pennsylvania courts would not read section 21–2110 as mandating placement of that teacher in the position. Although, as we have held supra, Stana had the right to some notice and some opportunity to respond to the negative teaching reports, we hold that she had no substantive "right" to the teaching position at Alderdice, even though she was the only person on the list for her subject when a vacancy occurred.

■ Therefore, the factfinder will have to determine whether, if Stana had been given notice and the opportunity to present a response to the adverse teaching report, she would have been placed in a public school teaching position. See Alexander v. Polk, 750 F.2d 250, 263–64 (3d Cir.1984). Even if she cannot show actual damages, she is entitled at least to nominal damages for the denial of procedural due process. See Carey v. Piphus, 435 U.S. 247, 266–67,

plicable for acts done in his official capacity. See Brandon v. Holt, —— U.S. ——, 105 S.Ct. 873,

878–79, 83 L.Ed.2d 878 (1985); Bailey v. York, 768 F.2d 503, 508 n. 5 (3d Cir.1985).

98 S.Ct. 1042, 1053–54, 55 L.Ed.2d 252 (1978); *Czurlanis v. Albanese,* 721 F.2d 98, 107 n. 7 (3d Cir.1983).

## VII.

The district court's order granting summary judgment for the defendants will be reversed, and the matter will be remanded to that court for further proceedings. Costs to be assessed against appellees.