Margaret VARMA, etc., et al.,
Plaintiffs,

v.

Edward J. BLOUSTEIN, President of Rutgers, etc., et al., Defendants.

Civ. No. 84–2332 (AET).

United States District Court,
D. New Jersey.

Jan. 11, 1988.
Certiorari Denied Feb. 21, 1989.
See 109 S.Ct. 1126.

---

Reinhardt & Schachter, P.C., Newark, N.J., for plaintiffs.

Carpenter, Bennett & Morrissey, Newark, N.J., for defendants.

## OPINION

ANNE E. THOMPSON, District Judge.

■ This matter is before the court on motion filed by defendants for summary judgment dismissing the complaint. The allegations giving rise to this action have been outlined in prior decisions of the court. As summarized by this court's opinion of June 9, 1986, plaintiff Varma claims that when her candidacy for tenure was considered by Rutgers University, the defendants failed to adhere to the standards for tenure set-forth in the University regulations and instructions, thereby violating her rights to due process under the U.S. and N.J. State Constitutions. Both parties accept the well-established principle of *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972) that a property interest protected by the due process clause of the Fourteenth Amendment exists only if there is a "legitimate claim of entitlement," and not merely a unilateral expectation. As noted by the court in its earlier June 1986 decision which considered other matters, the issue of whether a protected property interest exists requires an examination of whether the tenure procedures were intended to be a significant and substantive restriction on the discretion of the University. *See Goodisman v. Lytle,* 724 F.2d 818, 820 (9th Cir.1984). Defendants maintain that the relevant University regulations and instructions clearly indicate that Varma and other junior faculty members at Rutgers had no protected property or liberty interest in being awarded tenure and that summary judgment against plaintiff should be granted as a matter of law.

The procedures for faculty reappointment and tenure review are set forth and explained in the University Regulations and Instructions, *See* Regulation 60.2–60.-2a. The process is multileveled and begins with a recommendation by the tenured faculty at or above the candidate's proposed rank along with department chair. The candidate's promotion packet is then forwarded to the appropriate college's Appointments and Promotions Committee and the dean of the college. The candidate is then considered by a university-wide peer Section Committee, where appropriate, and forwarded to the Provost or Executive Vice–President. The materials are then forwarded to the Promotion Review Committee, a body of senior faculty and university administrators appointed to make faculty promotion recommendations to the President. The President then makes a final recommendation to the Board of Governors, which has the ultimate authority to make decisions involving tenure appointments and promotions. In addition, the Agreement between the faculty and the University provides for a detailed grievance procedure whereby a faculty member denied tenure may seek redress for alleged improprieties during the tenure review process.

Both parties focus on a series of statements within the Regulations and Instructions, in particular Regulation 3.30, entitled "Promotions," which provides:

> Promotions to higher ranks may be made in recognition of teaching effectiveness, scholarly or creative activity, research accomplishments, professional activity, and general usefulness to the University. The weight to be given to each of these factors will be determined in the light of the duties required and to be required of the appointee.

Regulation 60.2a further adds:

> Those responsible for academic appointments, reappointments, and promotions are to (1) base their recommendation of professional qualifications as defined in paragraph 3.30, page 50.9, without discrimination because of race, religion, sex, national origin, or views on any subject; (2) seek excellence; (3) utilize the judgments of faculty peers, normally including some faculty at other institutions where the position ordinarily carries tenure; (4) utilize opinions of students, especially those with majors in the appropriate department.

The factors for awarding tenure are discussed further in the Instructions, particularly in the University Senate Policy State-

ments appended to the Instructions. Appendix D to the Instructions, entitled Policy With Respect to Academic Appointments and Promotions explains:

> Those faculty members who have made the most important contributions to the University and have discharged their duties with the greatest distinction will be considered for promotion. Continued growth and continued contributions are required for all ranks.. Advancement to a higher rank is not automatic.

The statement continues:

> It is exceedingly difficult to measure and judge the various areas of activity. Judgment in these matters can be made only be qualified colleagues.... Such subjective judgment by persons competent to evaluate duties, responsibilities, services, and accomplishments will protect the interest of professors themselves, the department, the college, the University, and the students better than any objective rating that could be devised.

█ Summary judgment may be entered by a court under FED.R.CIV.P. 56(c) when the moving party demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Opponents to a motion for summary judgment may not rest on the mere allegations or denials of its pleadings, but must set forth specific facts showing there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Thus, where there has been adequate time for discovery, if upon motion the respondent fails to make a showing sufficient to establish the existence of an element essential to its case and on which it has the burden of proof, summary judgment may be entered against it. *Celotex Corp., supra,* 477 U.S. at 322, 106 S.Ct. at 2552. Where the relevant University procedures and regulations for awarding tenure are set forth before the court as is the case here, summary judgment on the issue of whether a protected property interest exists is appropriate. *See, e.g., Goodisman, supra,* at 818;

*Kilcoyne v. Morgan,* 664 F.2d 940 (4th Cir.1981), *cert. denied,* 456 U.S. 928, 102 S.Ct. 1976, 72 L.Ed.2d 444 (1982).

█ The issue before the court is whether these tenure procedures and standards sufficiently restrict the discretion of the University such that plaintiffs can claim more than a subjective expectation of promotion. *Perry v. Sindermann,* 408 U.S. 593, 601–2, 92 S.Ct. 2694, 2699–2700, 33 L.Ed.2d 570 (1972). As the Third Circuit instructed in its affirmance of this court's aforementioned June 1986 opinion, the mere fact that specific procedures for tenure evaluations have been set out does not create property interests protected by the Due Process clause, even if they may give rise to a claim for breach of contract. *Kovats v. Rutgers, The State University,* 822 F.2d 1303, 1314 (3d Cir.1987). Defendants rely on several cases which have considered particular university regulations governing tenure criteria and which have concluded that these procedures do not create protected property interests. *See, e.g., Goodisman, supra; Beitzell v. Jeffrey,* 643 F.2d 870 (1st Cir.1981); *Kilcoyne, supra.* While these decisions are not controlling here and this court must consider the particular regulations and criteria at issue at Rutgers, *Kovats, supra,* the court finds these cases instructive. The court also takes note of the fact that plaintiff, in her 70–page responsive brief does not focus on the tenure cases discussed by defendants but instead relies on cases involving particular regulations in vastly different fields such as government construction contracts and inmate parole decisions.

In *Beitzell,* after surveying various decisions and stating that in the absence of unusual circumstances, in no case it had examined had a court found that probationary university professors had a property right in a tenure appointment, the court concluded that the tenure criteria at issue there created neither "objective standards creating an automatic right to tenure" nor a reasonable expectation of a tenure grant. 643 F.2d at 875–6. The court found that the tenure criteria, which generally conformed to those recommended by the

American Association of University Professors and comparable to those at many universities, merely reiterated the traditional criteria for academic promotions of teaching, scholarship, and service. As the court discussed, it is well-accepted that the educational function of a university requires a wide range of discretion in making the initial tenure award and generally calls for the exercise of subjective judgment concerning the qualifications of the candidate and the needs of the university community. *Id.* at 875.

Similarly, the court in *Goodisman* also considered whether the existence of substantive criteria to be employed in the making of tenure recommendations rendered a tenure award a protected property interest. The court found that the provision of relevant considerations such as ability in teaching or research, respect from colleagues, and service to the University, did not so constrict the University's discretion so as to create a constitutionally-protected interest. 724 F.2d at 820–1.

■ The court has now reviewed the criteria and procedures for tenure evaluations utilized at Rutgers. The court finds that the guidelines set forth in Regulation 3.30, and as further explicated in the aforementioned Senate Statement, does not provide the significant substantive restrictions on University discretion in tenure appointments required to create a protected property interest. On the contrary, in Regulation 3.30 the University merely has set forth general standards of excellence in teaching, scholarship and research, professional activity, and usefulness to the University that would be common to any tenure evaluation process at a major academic institution. The Senate Statement on Academic Promotions clearly states that promotion is considered only for faculty who have excelled and that "advancement to a higher rank is not automatic." It further counsels that promotion requires the exercise of subjective judgment on the part of the evaluators and rejects the idea of an objective rating system. It also specifically notes that the most critical step in the process is the appointment to a tenured position, recognizing that once such a grant is made, the University loses its freedom to dismiss, except for cause. In addition, the Senate Statement on Tenure, Appendix F to the Instructions, also expressly states that in considering tenure grants the University will consider two kinds of factors: criteria for the advancement of individual faculty members as well as the educational needs of the University faculty as a whole. Furthermore, the fact that the introduction to the Regulations states that" no rule or regulation shall be construed as to infringe in any way upon the power and authority of the Board of Governors" provides further support that there was no intent to establish a set of objective criteria to govern tenure decisions to the exclusion of the exercise of the subjective discretion of the evaluators.

■ Plaintiffs now seek to argue, apparently for the first time in this litigation, that a mutually explicit common understanding that there would be an "automatic" grant of tenure to probationary faculty who measure as well against the criteria of Regulation 3.30 as had past tenured members of the Rutgers faculty at the time of their promotion. Plaintiffs assert that educational needs have never been a factor in tenure evaluations at Rutgers, and seem to maintain, in essence, that the University has surrendered its ability to improve the quality of its permanent faculty through the tenure process. The court finds that such a position is untenable given the generalized nature of the Rutgers tenure criteria, the inclusion of specific references to the use of educational needs in the process, and explicit statements that the grant of tenure is not automatic. As discussed above, the Senate Statement explains that the tenure appointment is a critical decision whose end is to reward excellence and that comparisons should be made to both faculty within the department and within the appropriate academic discipline in general.

The support plaintiffs present for its position is a single affidavit recently filed by Wells Keddie, president of the Rutgers Council of AAUP Chapters, who states that this "automatic" grant of tenure previously

existed. The court finds this evidence inadequate to resist a motion for summary judgment as plaintiffs have not come forward with facts showing a genuine issue for trial exists and based upon which a reasonable jury could return a verdict for them. *Anderson, supra,* 477 U.S. at 248, 106 S.Ct. at 2510. A mere pattern of results in the past is not support for a guarantee of tenure in the future *Lovelace v. Southeastern Massachusetts University,* 793 F.2d 419, 424 (1st Cir.1986). Moreover, numerous courts routinely have rejected claims of reliance on informal policies or practices where formalized, written tenure procedures and policies exist at a University. *See, e.g., Sabet v. Eastern Virginia Medical Authority,* 775 F.2d 1266, 1270 (4th Cir.1985); *Beitzell, supra,* at 877.

Plaintiffs also refer to the Carson Report, an outside study of the tenure process at Rutgers; however, this document does not support the contention that the tenure process has created a protected property interest, although it does recognize that is more difficult for current faculty to obtain tenure. On the contrary, it explains that Rutgers is in a state of transition as a university and that faculty tension, although probably a temporary phenomenon, is present and may rise as promotions are rejected during the transition period.

Plaintiffs' reliance on *Stana v. School District of Pittsburgh,* 775 F.2d 122 (3d Cir.1985) is inapposite. In *Stana,* the court found a protected property interest in remaining on a public school teaching eligibility list for at least two years when it was undisputed that Stana met the objective criteria for the list and uncontested by any party that a clear, well-established policy existed for maintaining names on the list for a specified period of time. *Id.* at 126. In contrast, plaintiffs here, after a reasonable time for discovery, have not presented evidence such that a jury could find that an explicit understanding existed that the University had agreed to award "automatic" tenure to all faculty who were as "qualified" as those who had been granted tenure previously. It should be noted that in *Stana* the court did not find that the plaintiff had a protected interest in actually being granted a position once she was on the eligibility list; the school district retained its discretion to hire a teacher for an actual position whether or not she was on the list. *Id.* at 131. Furthermore, in *Stana,* the well-established, explicit understanding that potential teachers could remain on the list was not inconsistent with either the statutes regulating the school district or its educational objectives. There being nothing in the written tenure and promotion materials at Rutgers which could support the extraordinary restriction on a University's ability to improve academically which plaintiffs advance, the court finds that plaintiffs could not have had a reasonable expectation of an automatic grant of tenure and rejects this attempt to create a disputed issue of material fact.

■ Plaintiffs devote considerable space to its allegations that the University does not properly consider the promotion criteria or follow the correct procedures in evaluating candidates for tenure. Plaintiffs also seek to illustrate the number of grievances which are filed by denied candidates and the alleged unsatisfactory nature of the grievance process. However, the question before the court is not whether the tenure decisions of the University are correct; it does not sit as a "Super–Tenure Review Committee." *Keddie v. Pennsylvania State University,* 412 F.Supp. 1264, 1270 (M.D.Pa.1976). The question presented here is whether a protected property interest in tenure has been created. Of course, even if no constitutional deprivation is present, plaintiffs may have a breach of contract claim if the promotion criteria or grievance process was violated in some manner. *Kovats, supra,* at 1314; *Lovelace, supra,* at 425; *Kilcoyne, supra,* at 942.

■ Plaintiffs also argue that they can claim a liberty interest in receiving tenure which is protected by the Fourteenth Amendment. However, in *Roth,* the Supreme Court rejected the position of some general liberty right to employment. 408 U.S. at 573, 92 S.Ct. at 2707. Instead, the

Court instructed that such an interest exists only in the case of a severely defamatory charge which would seriously damage one's community standing or where a stigma was imposed that would foreclose the individual's freedom to seek other employment opportunities. *Id.* As the Court stated: "It stretches the concept too far to suggest that a person is deprived of 'liberty' when he simply is not rehired in one job but remains free as before to seek another." *Id.* at 575, 92 S.Ct. at 2708. Moreover, even if it is the policy of Rutgers not to hire in another capacity a candidate rejected for tenure, the University has not foreclosed his or her "eligibility for a type of professional employment," as plaintiffs maintain. *Id.* at 574, 92 S.Ct. at 2707. A faculty member denied tenure remains free to seek an educational position at another institution; the fact that the tenure process at a single state university has not recommended that a faculty member be retained simply does not suffice to implicate a constitutionally protected liberty interest. *See Beitzell, supra,* at 878.

■ Plaintiffs also raises an argument that they have not been allowed to "teach freely" and that tenure decisions have been prejudiced against "work exciting a political or gender bias." Although teachers at state institutions possess First Amendment freedoms, by itself, the interest in holding a teaching position at a state university is not a protected free speech interest. *Roth, supra,* 408 U.S. at 575, 92 S.Ct. at 2708. In addition, it is well-established that the "four essential freedoms" of a university include the ability "to determine for itself on academic grounds who may teach, what may be taught, how it shall be taught, and who may be admitted to study." *Regents of the University of California v. Bakke,* 438 U.S. 265, 312, 98 S.Ct. 2733, 2759, 57 L.Ed.2d 750 (1978) (quoting *Sweezy v. New Hampshire,* 354 U.S. 234, 263, 77 S.Ct. 1203, 1218, 1 L.Ed.2d 1311 (1957)). As discussed above, it is inappropriate for the court to second-guess the judgment of a university tenure review as to the academic worth of a particular individual's research or instruction. *Keddie, supra,* at 1270.

The court finds insufficient support to find that plaintiffs, or other faculty similarly situated, were denied tenure on the basis of their exercise of speech protected by the First Amendment.

Finally, the court finds that the cases dealing with prisoner releases, transfers, and paroles to be unsupportive of plaintiffs' contention with respect to the tenure process at Rutgers. These decisions hold that a prison inmate has a protected liberty interest only where substantive limitations on official discretion exist in the form of particularized standards or criteria. *Olim v. Wakinekona,* 461 U.S. 238, 249, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813 (1983); *Winsett v. McGinnes,* 617 F.2d 996, 1005–6 (3d Cir.1980), *cert. denied, Anderson v. Winsett,* 449 U.S. 1093, 101 S.Ct. 891, 66 L.Ed.2d 822 (1981). As discussed at length above, the court finds that the regulations and instructions concerning tenure decisions at Rutgers do not restrict the traditional discretion of university officials to make tenure awards. Therefore, these cases do not affect the court's holding here that plaintiffs have not been deprived of any liberty or property interest protected by the Fourteenth Amendment.

Therefore, the court having found that plaintiffs have no interest in being awarded tenure which is protected by the Fourteenth Amendment of the Constitution, it need not determine whether the procedures provided by the tenure review and grievance processes afford due process. Therefore, summary judgment will be entered for defendants on the federal causes of action. Moreover, as the federal claims have been dismissed prior to trial, the court will decline to exercise pendent jurisdiction over any state law claims and the complaint will be dismissed. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).