**Christopher FREDERICK**

v.

**SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY.**

No. 95–1692.

United States District Court, E.D. Pennsylvania.

Feb. 29, 1996.

Lanier E. Williams, Philadelphia, PA, for Plaintiff.

Nicholas J. Staffieri, SEPTA Legal Division, Philadelphia, PA, for Defendant.

### MEMORANDUM

JOYNER, District Judge.

Pending before this Court are four motions that will be disposed of by this one Memorandum and Order. First, Defendant Southeastern Pennsylvania Transportation Authority (SEPTA) has filed a Motion for Summary

Judgment on liability. Second, Plaintiff Christopher Frederick has filed a Cross–Motion for Partial Summary Judgment on the same issue. Frederick has also filed a Motion for Partial Summary Judgment on the scope of damages available in this action and finally, SEPTA has filed a Motion to Strike Portions of Frederick's Amended Complaint. We address the cross-motions for summary judgment on liability first.

## STANDARD OF REVIEW

In considering a motion for summary judgment, a court must consider whether the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue of material fact, and whether the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The court must determine whether the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

In making this determination, all of the facts must be viewed in the light most favorable to the non-moving party and all reasonable inferences must be drawn in favor of the non-moving party. *Id.* at 256, 106 S.Ct. at 2514. Once the moving party has met the initial burden of demonstrating the absence of a genuine issue of material fact, the non-moving party must establish the existence of each element of its case. *J.F. Feeser, Inc. v. Serv–A–Portion, Inc.*, 909 F.2d 1524, 1531 (3d Cir.1990), *cert. denied*, 499 U.S. 921, 111 S.Ct. 1313, 113 L.Ed.2d 246 (1991) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)).

## FACTS

Most of the facts involved in this case are uncontested. The facts that are in dispute largely concern what was said at certain meetings and the legal import of those meetings. It is, for example, undisputed that Frederick was initially hired by SEPTA in 1987 as a bus operator. In 1992, SEPTA administered a random drug and alcohol test to Frederick, which he failed. Frederick exercised his rights under a labor agreement known as the Integrated Program to receive drug abuse treatment. After he successfully completed the treatment he returned to work as a bus driver. In addition, he signed a document agreeing that he would be subject to unannounced drug testing for the next twelve months and announced tests for eighteen following months. He also agreed that if he tested positive for drugs in any one of those tests, he would be subject to discharge.

Over the next year, Frederick passed fourteen unannounced tests. However, on March 24, 1993, a SEPTA doctor, Dr. Parchuri, received the results of a test administered to Frederick on March 18, 1994 that was positive for marijuana metabolites. Dr. Parchuri immediately "held" Frederick from work and directed Frederick's Supervisor, Amato Berardi, to send Frederick to SEPTA's Medical Department the next day. It is uncontested that at that meeting, Dr. Parchuri informed Frederick that he had failed the urine test. Frederick signed a Notice of Positive Test at that time and requested a retest.

Frederick has testified that during their meeting, Dr. Parchuri told him that he was discharged and that he was not given an opportunity to be heard before this termination. SEPTA denies that Dr. Parchuri terminated Frederick at this meeting. Its evidence is that Dr. Parchuri had no authority to terminate any SEPTA employee. Further, Dr. Parchuri has testified that although he does not specifically recall meeting with Frederick, he normally does not discuss terminations at this type of meeting. Further, Frederick testified that after he was told he had failed the drug test, he demanded a retest and explained that he had taken certain medications prior to the test.

On April 2, 1993, Dr. Parchuri received the results of the drug retest, which still indicated the presence of marijuana metabolites. He sent a memo with the retest results to Berardi on that day. Then, a few days before April 6, 1993, possibly still on April 2, 1993, Berardi called Frederick at his home and requested a meeting. Frederick suggested it take place that day and the two met in Berardi's office. Frederick agrees that he knew the meeting had something to do with his livelihood. At that meeting, Berardi told Frederick that he had failed a drug test and

that, according to Frederick, he was terminated. Berardi also told Frederick to return on April 6, 1993 with a union representative for another meeting. Frederick asserts that he was not given an opportunity to be heard before Berardi told him he was discharged, but there is no evidence that he was prevented from speaking.

At the April 6, 1993 meeting, Berardi read documents aloud to Frederick and his union representative that related to the failed drug test. He then announced that Frederick was being terminated under the Integrated Program and issued Frederick a Report of Disciplinary Action. Frederick testified that although no one told him he could not speak, he did not because he felt speaking would be futile because the decision to terminate him had already been made.

According to SEPTA records, Frederick was formally discharged on April 6, 1993. That is also the date it began the process to terminate Frederick's health insurance benefits. Frederick agrees that he was not formally discharged until that date, but maintains that he was informally discharged twice before then. Finally, Frederick engaged in post-termination grievance proceedings in which his termination was upheld.

## DISCUSSION

Frederick's due process claim is limited to challenging his pre-termination rights to due process. We stress the limited scope of Frederick's claim because his Cross Motion for Summary Judgment presents argument concerning his right to due process before being suspended and because SEPTA's Motion presents evidence and argument concerning the adequacy of its post-termination procedures. Neither of those issues is squarely before this Court and each is relevant only insofar as it affects Frederick's pre-termination due process rights.

█ It is agreed that Frederick was entitled to procedural due process at all times before he was deprived of an important property interest, his job. Accordingly, we turn to the principals established in *Cleveland Board v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) for an explication of what process is due in this situation.

*Loudermill* held that "all the process that is due is provided by a pretermination opportunity to respond, coupled with post-termination administrative procedures." *Id.* at 547–48, 105 S.Ct. at 1496–97. This pretermination opportunity to respond requires only "some kind of a hearing" that need not be elaborate. *Id.* at 542, 545, 105 S.Ct. at 1493, 1495.

Given that, the *Loudermill* Court found that the plaintiff was denied due process when he was terminated by letter, without any opportunity to respond before the termination became effective. *Id.* at 535, 105 S.Ct. at 1489. Likewise, in both *Bradley v. Pittsburgh Board,* 913 F.2d 1064 (3d Cir.1990) and *Stana v. School District,* 775 F.2d 122 (3d Cir.1985), the plaintiffs suffered adverse employment decisions without any prior notice that such an event was even under consideration and without any opportunity to contest the actions. Because neither received any kind of pretermination hearing, neither received due process.

In contrast, in *Gniotek v. City of Philadelphia,* 808 F.2d 241, 244 (3d Cir.1986), *cert. denied,* 481 U.S. 1050, 107 S.Ct. 2183, 95 L.Ed.2d 839 (1987), due process was provided when, during the course of a single meeting, the plaintiff was called into his supervisor's office, given a summary of the charges and evidence against him and then terminated. The Third Circuit held that due process does not always require advance notice of the charges. *Id.* Moreover, the Court stressed the government's interest in "quickly suspending an unsatisfactory employee." Likewise, in *Copeland v. Philadelphia Police Dept.,* 840 F.2d 1139 (3d Cir.1988), *cert. denied,* 490 U.S. 1004, 109 S.Ct. 1636, 104 L.Ed.2d 153 (1989), the Court ruled that due process was met when a police officer was orally informed before a meeting and then at the meeting that he had failed a urine drug test but was not told until the end of the meeting that he was to be suspended with intent to dismiss. *Id.* at 1145. Notably, the Police Department went into the meeting with a prepared suspension notice, which was delivered to plaintiff at the end of the meeting. *Id.*

SEPTA seeks a summary judgment that Frederick received due process before he was terminated. It contends that Frederick was not terminated until April 6, 1993 because SEPTA regulations only permit terminations in the presence of a union representative, if one is available. Because the formalities of discharge were present only at the April 6, 1993 meeting, SEPTA contends this was when he was actually discharged. In addition, SEPTA points to all its internal paperwork, which all indicates a termination date of April 6, 1993.

SEPTA asserts that at the April 6, 1993 meeting, Frederick was informed of the nature and substance of the evidence against him, given an opportunity to respond, which he chose not to take, and then discharged. Provided that all this is true, a summary judgment in SEPTA's favor would be appropriate.

Frederick's version of the facts is different, however. He contends that he was discharged twice before his final discharge at the April 6, 1993 meeting. He also contends that he was suspended without pay on March 25, 1993. Because this is a summary judgment motion, we temporarily put aside the internal inconsistency in a person being discharged from the same job on three separate occasions with no intervening re-hirings.

### 1. Suspension Without Pay.

First, Frederick argues that he was entitled to a hearing before he was suspended without pay by Dr. Parchuri. He cites *Bradley,* 913 F.2d at 1077, for support. There, the plaintiff was not formally suspended, but was restrained from returning to work and was not paid. The Third Circuit held that this fact took the case out of the *Loudermill* framework, because of the Supreme Court's belief that "if a governmental employer believe[s] there [a]re significant hazards in keeping an employee on the job until the time a hearing could be held, 'it can avoid the problem by suspending with pay.' " *Bradley,* 913 F.2d at 1077, *quoting Loudermill,* 470 U.S. at 545, 105 S.Ct. at 1495.

The problem with this argument is that Frederick's Amended Complaint does not make a claim for lack of pre-suspension due process. For this reason, this entire line of argument is irrelevant to this motion. Therefore, we do not address whether there is a material issue of fact as to whether Frederick was denied an opportunity to be heard at this meeting, given his own testimony that he attempted to explain the test results and did demand a retest, nor do we address the substantive question whether Frederick was entitled to a hearing before being suspended without pay.

### 2. Discharge by Dr. Parchuri.

Frederick avers, presumably in the alternative, that he was actually discharged at the meeting by Dr. Parchuri. In response, SEPTA provides a plethora of evidence that Frederick was not discharged on March 25, 1993. This evidence is first, that Dr. Parchuri had no firing authority and so that no matter what Dr. Parchuri said, he was incapable of actually discharging Frederick. Second, that Frederick received health insurance benefits until April 6, 1993, indicating that he was still an employee until that date. Finally, that all SEPTA's internal records show that Frederick was terminated on April 6, 1993.

We find that in this instance, there is no material issue of fact that Frederick was not discharged on March 25, 1993 by Dr. Parchuri. We make this finding despite Frederick's testimony that Dr. Parchuri said he was discharged at that meeting and despite Frederick's affidavit that his last date of employment was March 25, 1993 and that between March 25, 1993 he was not permitted to work and received no pay. Assuming all that is true, this is not evidence that Frederick was actually terminated on March 25, 1993 as opposed to suspended without pay.

A non-moving party may not withstand summary judgment on the basis of evidence not based on personal knowledge or by making conclusory allegations as to ultimate facts or conclusions of law. *Anderson,* 477 U.S. at 254–55, 106 S.Ct. at 2513–14. Frederick does not contest that Dr. Parchuri had no power to discharge him and he agrees that he did not receive a Notice of Termination from Dr. Parchuri. Rather, he simply relies

on Dr. Parchuri's statement that Frederick was discharged. This conclusory statement, admittedly made without authority, is not enough for a reasonable fact-finder to base a verdict on. For that reason, there is no *genuine* issue whether Dr. Parchuri discharged Frederick.[1]

### 3. Discharge by Berardi prior to April 6, 1993.

Frederick contends that he was also discharged at the informal meeting with Berardi held before April 6, 1993. Berardi actually had the authority to discharge Frederick even if no union representative was available. Berardi has no independent recollection of this meeting so we have only Frederick's testimony as to what took place then is uncontested by evidence.

■ Frederick testified at his deposition that when he went into the meeting, he was aware the meeting concerned his livelihood. At the meeting Berardi told him that he was in violation of the Integrated Program, that he was terminated and that he should return on April 6, 1993 with a union representative. Frederick also testified that he had no opportunity to be heard at this meeting because the decision to terminate him had already been made. There is, however, no evidence that he was prevented from speaking or from arguing his side of the case.

The Supreme Court has stressed that due process requires notice and an opportunity to be heard. Frederick maintains that due process required the hearing to take place before the actual decision to terminate him was made and not just before the actual termination took place. He cites no caselaw in support of this assertion. In fact, a reading of the precedents indicates that decisions to terminate have frequently been made before the *Loudermill*-required hearing. *McDaniels v. Flick*, 59 F.3d 446, 451 (3d Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 1017, 134 L.Ed.2d 97 (1996); *Copeland*, 840 F.2d at 1145. *Loudermill* itself stresses that the hearing must be held before the deprivation. 470 U.S. at 545, 105 S.Ct. at 1495. It says nothing, however, about a pre-decision hear-

ing. *Id.* (hearing is "an initial check against mistaken *decisions* ") (emphasis added).

We find that because Frederick had notice of the subject matter of the meeting, he was informed of the nature of the evidence against him at the meeting and met personally with the decision-maker, there is no question of fact that, assuming Frederick was discharged at the pre-April 6, 1993 meeting, he received due process.

### 4. Discharge by Berardi on April 6, 1993.

Finally, Frederick contends that he was deprived of due process at the April 6, 1993 meeting, when he was formally discharged. He contends that he was denied the opportunity to be heard, resulting in the violation. This argument is based on his deposition testimony that because he was hearing that he was terminated for the third time, he thought it would be futile to say anything. He agrees that he was not told he could not speak.

■ Again, we find that there is no genuine issue of material fact that Frederick received due process at the April 6, 1993 meeting. At that meeting he was specifically aware of the evidence against him, he had a union representative and he was not prevented from speaking. That he chose not to speak or believed it would be futile to speak is not the same as being prevented from speaking. Indeed, in *Gniotek*, the plaintiff police officers refused to speak on the grounds that they might incriminate themselves. 808 F.2d at 245. Even in this situation, the Court ruled that they still had the opportunity to be heard and therefore, had received due process. *Id.* We find likewise.

Based on the above, we find that there is no genuine issue of material fact that Frederick received the process due to him before he was terminated and accordingly, grant SEPTA's Motion for Summary Judgment and deny Frederick's Motion. Given that ruling, Frederick's Motion for Partial Summary Judgment on damages is denied as

---

1. Even if there were, Frederick's own deposition testimony belies his assertion that he had no

opportunity to be heard at his meeting with Dr. Parchuri. Frederick Dep. at 72–74.

moot, as is SEPTA's Motion to Strike Portions of the Amended Complaint.

An appropriate Order follows.

### ORDER

AND NOW, this 29th day of February, 1996, upon consideration of SEPTA's Motion for Summary Judgment and responses thereto, the Motion is hereby GRANTED and Summary Judgment is hereby entered in favor of SEPTA and against Christopher Frederick. Further, upon consideration of Plaintiff's Cross Motion for Partial Summary Judgment and responses thereto, the Motion is hereby DENIED. Finally, Plaintiff's Motion for Partial Summary Judgment and SEPTA's Motion to Strike Part of Frederick's Amended Complaint are hereby DENIED as MOOT.