Jonathan J. McCLENDON, Sr. and Crystal R. McClendon, Plaintiffs,

v.

Detective Sgt. William (Bill) TURNER, Defendant.

Civ. A. No. 91-54 Erie.

United States District Court, W.D. Pennsylvania.

May 30, 1991.

Jonathan J. McClendon, Sr., Cresson, Pa., for plaintiffs.

## MEMORANDUM OPINION

MENCER, District Judge.

Plaintiff Jonathan McClendon is an inmate at the State Correctional Institution (SCI) at Cresson, Pennsylvania. He and his wife Crystal bring this civil rights action under 42 U.S.C. § 1983 against Detective Sergeant William Turner of the Erie Police Department. Defendant has not yet been served because a Magistrate's Report and Recommendation ("MRR" or "The Report"), filed on April 22, 1991,[1] recommended dismissal of the complaint, in our view, on the grounds of its frivolity. 28 U.S.C. § 1915(d).[2] Because we believe that the Magistrate misconstrued the applicable law, we decline to adopt his Report and Recommendation.

### A. Factual Background

 Plaintiffs proceed *in forma pauperis* and *pro se*. As we evaluate the factual allegations, therefore, we must be mindful that *pro se* complaints are to be "liberally construed" and "must be held to less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (citation omitted). At the same time, faced with the possibility of abuse of the *in forma pauperis* provisions, Congress provides, in 28 U.S.C. § 1915(d), for swift rejection of complaints which are based upon "fantastic or delusional scenarios." *Wilson v. Rackmill*, 878 F.2d 772, 774 (3d Cir.1989). Dismissal under 28 U.S.C. § 1915(d), however, is quite limited, available only "when the claims are based on an indisputably meritless legal theory or on clearly baseless factual contentions." *Id.; Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). This narrow standard for § 1915(d) dismissals coupled with the solicitude for *pro se* complaints governs our inquiry into plaintiffs' factual allegations which, of course, we accept as true, *Wilson*, 878 F.2d at 774, and to those we now turn.

On December 22, 1988, Mr. McClendon was arrested for robbery by Detective Turner, the defendant in this case. McClendon pleaded guilty to the charges in April, 1989, and on May 12th he was sentenced to 4 to 15 years imprisonment and was ordered to pay restitution in the amount of $3,200 after his release from prison. Although McClendon is currently serving his sentence at SCI Cresson, his complaint has nothing to do with his incar-

---

**1.** The MRR was dated "April ___, 1991." MRR at p.1.

**2.** The Report concludes by stating that "the Complaint should be dismissed for failure to state a claim upon which relief can be granted, and because the Defendant was not acting under color of law." MRR at 4; Id. at 1. Plaintiffs filed objections based on *Oatess v. Sobolevitch*, 914 F.2d 428 (3d Cir.1990), which held that the district court cannot dismiss a complaint for its failure to state a claim under Fed.R.Civ.P. 12(b)(6) before the defendant has been served; a complaint can only be dismissed before service upon the defendant if it is held to be frivolous under 28 U.S.C. § 1915(d). The Magistrate considered the objections and did not alter his recommendation. Thus, on the bases of logic and judicial economy, we conclude that the Magistrate believed the plaintiffs' claims to be frivolous under § 1915(d). Cf. *Harris v. Johnson*, 784 F.2d 222 (6th Cir.1986) (district court must make reliance upon 28 U.S.C. § 1915(d) clear and explicit). The difference in the standard between a dismissal for failure to state claim and a dismissal as frivolous is not a monumental one, however, see *Wilson v. Rackmill*, 878 F.2d 772, 774 (3d Cir.1989), and The Report is in error under either standard.

ceration. Rather, he asserts that long after the arrest Detective Turner confiscated his 1988 tax refund check, thereby depriving him of his property without due process of law.

Before his arrest, plaintiff was employed at the Erie Malleable Iron factory in Erie. On May 26, 1989 Crystal McClendon received his 1988 IRS tax refund check in the amount of $1868.49 owing from that employment. Ms. McClendon authorized her sister, Tina Phillips, to cash the check because neither plaintiff had a bank account. Next, plaintiff states that "[u]pon arriving at her bank to cash our refund Ms. Tina Phillips was stopped from cashing the check by the arresting officer in my previous case, Detective William Turner, who obviously had my wife Crystal and her sister Ms. Tina Phillips under some type of surveillance...." Complaint at ¶ 7. Ms. Phillips was detained but released after a call was placed to Crystal McClendon confirming Ms. Phillips' authorization. Detective Turner, however, confiscated the check and continues to possess it.[3]

Plaintiffs specifically contend that the defendant's actions were taken under color of state law, Complaint at ¶ 10, and they make allegations which may constitute claims for deprivation of property without due process, U.S. Const. Am. XIV, violation of the Fourth Amendment search and seizure provisions, U.S. Const. Am. IV, and possibly others. However, since this case is in such an embryonic stage—the Defendant has not even been served let alone responded—we do not address the myriad of issues the complaint may or may not raise; the specific contours of the claims and the defenses will, no doubt, be developed in due course. We confine our opinion today to those issues implicated in the Magistrate's Report and Recommendation: state action and procedural due process.

### B. State Action

■ In order to recover under 42 U.S.C. § 1983, plaintiffs must demonstrate (1) that the Defendant acted under color of state law, and (2) that such actions deprived plaintiffs of a constitutionally protected

right. *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); *Riley v. Jeffes*, 777 F.2d 143, 145 (3d Cir.1985). The Magistrate dismissed the complaint for failing to satisfy the first element, but that is incorrect. The "under color of state law" requirement "is satisfied by a showing of ... misuse of official power possessed by virtue of state law." *Hicks v. Feeney*, 770 F.2d 375, 378 (3d Cir.1985). "It is firmly established that a defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State." *West v. Atkins*, 487 U.S. 42, 49, 108 S.Ct. 2250, 2255, 101 L.Ed.2d 40 (1988).

■ It is plain that Mr. McClendon has made allegations sufficient to meet this requirement. He alleges that Detective Turner placed Crystal McClendon and her sister "under some type of surveillance," Complaint at ¶ 7, that he then "stopped" Tina Phillips from cashing the IRS refund check, *Id.*, that he "detained" Ms. Phillips at the bank, *Id.* at ¶ 10, that he still holds the check, *Id.* at ¶ 11, and that to accomplish all this Detective Turner "misus[ed] his authority." *Id.* at ¶ 13. In addition to these supporting allegations, the complaint specifically charges that Detective Turner acted "under color of law." *Id.* at ¶¶ 10, 13. It is quite clear then, that plaintiff charges Detective Turner with abusing his position to enjoin Ms. Phillips from cashing the check and then to confiscate it. Although plaintiff may fail to prove these allegations, we cannot agree with the Magistrate that, if proved, such facts would not support a finding of state action. Cf. *Gibson v. City of Chicago*, 910 F.2d 1510 (7th Cir.1990) (police officer not acting under color of state law when on medical leave for mental infirmity).

### C. Due Process

■ With respect to the second element of a § 1983 claim, The Report concludes that plaintiff did not "allege a constitutional violation." MRR at 3. Fairly read, Mr. McClendon's charge that "Detective Turner has violated mine and my wife's Constitu-

---

**3.** Plaintiffs have been unable to obtain relief from the IRS.

tional Rights by holding on to the refund check without just cause," Complaint at ¶ 10, alleges at least a violation of procedural due process. The Magistrate, however, concluded that any such cause of action would be a state law matter. MRR at 2–3. Obviously, he believed that this is a case "which alleges facts that are commonly thought to state a claim for a common law tort normally dealt with by state courts, but instead [is] couched in terms of a constitutional violation." *Parratt*, 451 U.S. at 533, 101 S.Ct. at 1911–12.

The Magistrate relies on *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), in summarily classifying the case at bar as strictly a state tort law matter; he draws a substantive distinction between plaintiff's claim and one which "is determined under federal substantive law." MRR at 3. *Paul*, however, was a short-lived and poorly received attempt to substantively distinguish constitutional from common law torts, *Paul*, 424 U.S. at 701, 96 S.Ct. at 1160–61 (§ 1983 should not become a "font of tort law"), by focusing on the interest sought to be protected. *Id.* at 712, 96 S.Ct. at 1160. *Parratt* and its progeny developed a procedural analysis which has overshadowed *Paul*'s substantive approach and become the dominant doctrine in constitutional tort cases such as this one. See, e.g., *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) (factually similar scenario, where prison guards intentionally mistreat prisoner's property, is governed by *Parratt*).

The *Parratt* doctrine holds that procedural due process claims must be evaluated by first deciding whether the official's action was "random and unauthorized," and if it was, by determining whether the state provides an adequate remedy; if it does, then no procedural violation has occurred. For "random and unauthorized" deprivations, even for those worked under color of state law, the Due Process Clause requires only that states provide an adequate post-deprivation remedy. *Parratt*, 451 U.S. at 541–42, 101 S.Ct. at 1916.

Although dissimilarity in applying its tenets may appear to have left the boundary between state and constitutional tort almost as abstruse as ever, see *Zinermon v. Burch*, 494 U.S. 113, ——, 110 S.Ct. 975, 978–79, 108 L.Ed.2d 100, 107–08 (1990); *Daniels v. Williams*, 474 U.S. 327, 329, 106 S.Ct. 662, 663–64, 88 L.Ed.2d 662 (1986), *Parratt* marked a clear and fundamental shift away from the drawing of substantive distinctions of the type the Magistrate has drawn here. If a deprivation is found to be "random and unauthorized" and the state remedy is found to be adequate, a plaintiff's claim is dismissed, not because of any substantive distinction between state law and "federal substantive law," but because the requirements of procedural due process have not been contravened. *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), set out the now familiar three-factor balancing test for determining how much process is due, and *Parratt* is an application of that test not an exception to it. *Zinermon v. Burch*, 494 U.S. 113, 110 S.Ct. 975, 985, 108 L.Ed.2d 100 (1990); Note, *From* Parratt *to* Zinermon: *Authorization, Adequacy and Immunity in a Systemic Analysis of State Procedure*, 11 Cardozo Law Review 831, 847–48 (1990).

Whether the instant case belongs in state court then, will depend primarily on whether the action was random and unauthorized. Because of *Parratt*'s procedural focus, though, state tort law is not relevant to that determination. Detective Turner's conduct may well have been tortious, but that does not make it unauthorized.[4] Authorization might depend on a number of factors including, for example, the extent of the discretionary or supervisory power invested in the defendant, *Stana v. School District*, 775 F.2d 122, 129–30 (3d Cir.1985), the foreseeability of the type of deprivation at issue, *Zinermon*, 110 S.Ct. at 989–90, whether the action was taken in departure of procedural rules, see *Stana*, 775 F.2d at 129, or the existence of a custom or common usage, *Berlanti v. Bodman*, 780 F.2d 296, 301 (3d Cir.1985). If we were to consider an action unauthorized because it vio-

4. The tort law, of course, is relevant to the existence of an "adequate state remedy."

lated state tort law, however, two anomalies would follow.

First, it would yield a repetitive and inefficient drain on judicial resources since after our consideration of the tort law on the issue of authorization another adjudication would have to cover the same ground again on the question of liability. This effect, of course, would also vitiate *Parratt*'s progress in extricating the federal courts and the federal Constitution from the administration of state tort law. Second, it would create a paradox that contradicts well settled doctrine requiring some amount of process *before* the government works a deprivation. *Parratt,* 451 U.S. at 540, 101 S.Ct. at 1915–16; see *Fuentes v. Shevin,* 407 U.S. 67, 97, 92 S.Ct. 1983, 2002–03, 32 L.Ed.2d 556 (1972); *Mitchell v. WT Grant and Co.,* 416 U.S. 600, 611, 94 S.Ct. 1895, 1902, 40 L.Ed.2d 406 (1974); *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1965). If *Parratt* holds that simply because a deprivation constitutes a state law tort postdeprivation remedies are all that is required to satisfy the Constitution, then it effectively overrules those cases mandating predeprivation process as the general practice, because anytime a grievant seeks recovery for an unjustified deprivation of property a tort has allegedly taken place. In other words, although the Constitution routinely prescribes predeprivation hearings to "minimize the risk" of an unjustified deprivation's ever taking place, *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex,* 442 U.S. 1, 13, 99 S.Ct. 2100, 2106, 60 L.Ed.2d 668 (1979), by establishing that an unjustified deprivation had in fact occurred, a defendant would be proving that the predeprivation hearings were never required. See Note, *supra* at 851–52. Reductio ad absurdum.

In sum then, even if Detective Turner's actions were tortious, they were not necessarily "random" or "unauthorized" under *Parratt*. If they were not "random" or "unauthorized," then the federal due process claim can move forward. Thus, to the extent that The Report found that the state tort law defined the due process claim out of existence, it was in error.